COMMONWEALTH *vs.* JUNIUS T. VAUGHN, JUNIOR.

Suffolk.    October 6, 1952. — October 30, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Evidence,* Opinion: expert; Irresponsive answer; Admissions and confessions. *Homicide. Practice, Criminal,* Mitigation of penalty, Verdict, Capital case. *Parole. Constitutional Law,* Ex post facto law.

At a murder trial, the opinion of a medical expert when he first examined the body of the victim, as to how long he had been dead, was admissible although the question to the expert did not request any grounds or reasons for the opinion. [335]

It was not error at a murder trial for the judge to refuse to strike out, as irresponsive to a question to a medical expert calling for his opinion as to how long the victim had lived after he received a crushed liver, the answer that the victim's "death was not immediately caused by crushing of the liver." [335–336]

No error appeared at a murder trial in the admission of an unimportant question asked at a police station by a police officer of the defendant which contained a statement by a third person, and the answer by the defendant which was in the nature of an admission although it denied the third person's statement. [336–337]

At the trial of an indictment for murder by assaulting and beating, evidence of multiple injuries inflicted upon the body of the victim and of a description by the defendant to a police officer of an attack made upon the victim by the defendant and two others with whom it could be found he acted in concert warranted a verdict of guilty of murder in the first degree. [336–337]

Under G. L. (Ter. Ed.) c. 265, § 2, as appearing in St. 1951, c. 203, if the jury in a murder case decide that the defendant is guilty of murder in the first degree and are divided as to whether to recommend that the sentence of death be not imposed, the verdict which must be returned is simply guilty of murder in the first degree. [338]

The provision added to G. L. (Ter. Ed.) c. 265, § 2, in the revision thereof by St. 1951, c. 203, that in "no event shall a person convicted of murder in the first degree be eligible for parole," was not an ex post facto law forbidden by art. 1, § 10, of the Federal Constitution as applied to a defendant tried under the revised statute for a homicide committed in 1949 and sentenced to imprisonment for life upon a verdict

Commonwealth v. Vaughn.

of guilty of murder in the first degree with a recommendation by the jury that the sentence of death be not imposed. [338–339]

A murder case did not remain a "capital case" within G. L. (Ter. Ed.) c. 278, § 33E, as amended by St. 1939, c. 341, after a verdict of guilty of murder in the first degree with a recommendation by the jury under c. 265, § 2, as appearing in St. 1951, c. 203, that the sentence of death be not imposed and the imposition of a sentence of imprisonment for life. [339]

INDICTMENT, found and returned on August 10, 1951.

The case was tried in the Superior Court before *Murray*, J.

*Samuel H. Cohen*, (*Patrick F. Murphy* with him,) for the defendant.

*John F. McAuliffe*, Assistant District Attorney, (*Donald P. Brennan* with him,) for the Commonwealth.

WILKINS, J. The defendant was convicted of murder in the first degree in the killing, by assaulting and beating, of Roger Brown on August 11, 1949, in an area known as Washington Park in the Roxbury district of Boston. The jury recommended that the sentence of death be not imposed, and the defendant was sentenced to life imprisonment. G. L. (Ter. Ed.) c. 265, § 2, as appearing in St. 1951, c. 203. The case is here on appeal under G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended. A second indictment charging assault with intent to rob Roger Brown, on which the defendant was likewise convicted, was placed on file. The indictments also named one Waller as a defendant, but he was not brought to trial.

There was evidence that Roger Brown, who was a man of small stature living near the park, had gone for a walk with his dog after 10:30 P.M. on August 10, 1949. It was a very warm evening. The park was crowded. About 11 P.M. he was observed by three relatives sitting on a park bench apparently asleep, with his dog lying on the ground beside him. When they repassed the spot thirty-five minutes later, the bench was empty. About 11:20 P.M. a police officer had seen him sitting on the same bench. The dog returned home alone a little before midnight. Early the following morning the body of Brown was found on the ground in the park. A trousers pocket was turned inside out. At 8:25 A.M. he was

pronounced dead at the Boston City Hospital. Examination disclosed broken ribs and cartilages; deep bruises with dull laceration over the right side of face, forehead, and nose; fracture of the nose with dislocation; and crushed liver.

The defendant was arrested at his Roxbury home on April 20, 1951. At the police station he admitted taking part in the robbery and assault with Waller and one Mixon. At the park he pointed out to the police the exact spot where the body was left.

On August 18, 1949, the defendant left his employment in Boston and went to New York with Mixon. He returned to Boston about September 17, 1949.

1. Many assignments of error have to do with rulings on evidence, all but one during the testimony of Dr. Timothy Leary, the medical examiner. They are but briefly argued, and all are wholly without merit.

(a) The first assignment, in so far as it has been argued, has to do with one question asked Dr. Leary on direct examination. The witness had qualified as a medical expert, and had testified that he first saw the body at the hospital on August 11, 1949, at 9:05 A.M. He was asked, "At 9:05, on August 11, 1949, had you formed an opinion as to how long the victim had been dead?" Subject to the defendant's exception, the witness answered, "Yes." In answer to a later question he answered, "Hours." There was no error in his testifying to the results of his own observations. *Commonwealth* v. *Russ*, 232 Mass. 58, 74. The question could not fail to be understood to refer to his examination of the body of the deceased. It was not an essential requirement that the question call for the grounds or reasons upon which the opinion was based. *Commonwealth* v. *Johnson*, 188 Mass. 382, 389. *Greene* v. *Cronin*, 314 Mass. 336, 342–343. Wigmore, Evidence (3d ed.) § 675.

(b) The second assignment of error presents a similar question. Dr. Leary had testified on direct examination that he had an opinion as to how long the victim had lived after he received the crushed liver. It was then admissible

to ask him how long.   His answer was, "Well, in my opinion, death was not immediately caused by crushing of the liver." It was not error to refuse to strike out the answer as not responsive.

(c) The eighth assignment of error concerns the same type of question asked during the direct examination of Dr. Leary.   There was no error.

(d) The sum total of the defendant's argument on the third assignment consists of the bald citation of one case from a foreign jurisdiction; and on the ninth and tenth assignments of two Massachusetts cases each.   There is no attempt to show their pertinency by a statement of any kind.   Assuming that these are a sufficient argument on these questions of evidence to meet the test of our rules, no error in the rulings appears.   Rule 15 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 699.   *Boston* v. *Dolan*, 298 Mass. 346, 355.

(e) The sixth assignment of error has to do with a question and answer of trifling importance contained in the stenographic transcript of a conversation at the police station between a police officer and the defendant.   The defendant described the attack upon the deceased which he said was made by Waller, Mixon, and himself.   All three approached the deceased.   Some one of the three struck a blow, and the man crumpled up and fell to the ground. The defendant hit him twice with his fists on the side of the face, and kicked him once in the side.   He could not remember who kicked the deceased in the face.   The defendant pulled out one trousers pocket, but it had nothing in it.   If the deceased had had anything, the defendant was going to take it.   The deceased was not moving when they left him, but the defendant did not know whether he was unconscious or dead.   The defendant then told the police officer that a day or two later he asked Randy Waller if he knew what happened to the man in the park.   Waller replied, "maybe nothing happened, they must have found him."   He then said that at his house they read the newspapers, one of which was the Traveler.   Q.   "So that if

Randy said, that a couple of days after this assault, that he and you read in the Traveler that the man you beat up in Washington Park, that the police believed that he had been hit with an automobile, would that be true?" A. "No, sir, I am going to say one thing, I didn't read it in the paper." This question and answer given at the police station were objected to on the ground that the question contained the statement of a third party which the defendant denied. In this court the defendant relies upon *Commonwealth* v. *Kosior*, 280 Mass. 418, 422, and *Commonwealth* v. *Polian*, 288 Mass. 494, 496. Those cases are not controlling for the reasons pointed out in *Commonwealth* v. *Grieco*, 323 Mass. 639, 641–642. What is more, the defendant was not harmed by the newspaper evidence, which did not affect the really vital issue of the assault and the killing.

2. There was no error in denying the motion for a directed verdict which related to so much of the indictment as alleged "with intention to murder him and by such assault and beating did murder and kill said Roger Brown." The multiple injuries which the jury could have found had been inflicted upon the body of the deceased, and the defendant's statement at the police station, which we have outlined above, were enough to permit the jury to find the defendant guilty of murder in the first degree. *Commonwealth* v. *Devlin*, 126 Mass. 253. *Commonwealth* v. *Devereaux*, 256 Mass. 387, 391. *Commonwealth* v. *Bartolini*, 299 Mass. 503, 516. *Commonwealth* v. *Galvin*, 323 Mass. 205, 217. *Commonwealth* v. *McGarty*, 323 Mass. 435, 440. There were in addition other similar statements of the defendant which we need not set forth. It could not have been ruled that there was insufficient evidence to convict the defendant of acting in concert with Waller and Mixon. *Commonwealth* v. *Riches*, 219 Mass. 440, 442. *Attorney General* v. *Tufts*, 239 Mass. 458, 494. *Commonwealth* v. *Venuti*, 315 Mass. 255, 260.

3. The defendant's suggestions in his brief respecting the charge raise no new point. They fall short of being an

argument, as required by Rule 15 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 699.

4. The defendant's motion for a new trial was denied. Under this the defendant argues two matters.

(a) The judge charged: "If the jury decide the defendant is guilty of murder in the first degree and the jury is divided in any way as to whether or not the recommendation that the death penalty be not imposed, the verdict of the jury is 'Guilty of murder in the first degree' and nothing else. . . . If the jury is divided, not unanimous in any manner, in any way, by any count, as to whether or not the recommendation that the death penalty be not imposed, then the verdict of the jury which is to be returned is guilty of murder in the first degree, and nothing else." The defendant's argument, which is based upon *Andres* v. *United States,* 333 U. S. 740, 748, was completely answered in *Commonwealth* v. *McNeil,* 328 Mass. 436, 441–442.

(b) The fifth ground of the motion read: "Chapter 203, Acts of 1951, is unconstitutional and the sentence of the defendant thereunder is illegal and deprives him of his constitutional rights." This statute, which provided for the first time in this Commonwealth that a jury might recommend upon a verdict of murder in the first degree that the sentence of death be not imposed, also introduced into our statute law the provision: "In no event shall a person convicted of murder in the first degree be eligible for parole." At the date of the murder G. L. (Ter. Ed.) c. 127, § 154A, inserted by St. 1935, c. 225, as amended by St. 1939, c. 451, § 53, contained the following: "In every case where a person is confined in any penal institution . . . under a sentence for the term of his . . . natural life, the parole board, acting as the advisory board of pardons, shall, within sixty days after the expiration of fifteen years of such sentence, consider carefully and thoroughly the merits of such case on the question of extending clemency, as provided in section one hundred and fifty-four in the case where a petition for pardon or commutation of sentence is referred to it by

the governor, and all the provisions of said section shall, so far as pertinent, apply."

It is pressed upon us that this is an ex post facto law enacted in violation of § 10 of art. 1 of the Constitution of the United States. "It may be said, generally speaking, that an ex post facto law is one which imposes a punishment for an act which was not punishable at the time it was committed; or an additional punishment to that then prescribed; or changes the rules of evidence by which less or different testimony is sufficient to convict than was then required; or, in short, in relation to the offence or its consequences, alters the situation of a party to his disadvantage." *Duncan* v. *Missouri,* 152 U. S. 377, 382. *Murphy* v. *Commonwealth,* 172 Mass. 264, 268–270. *Commonwealth* v. *Phelps,* 210 Mass. 78, 79–80. See *Commonwealth* v. *Bellino,* 320 Mass. 635, 641–642. "But an act plainly mitigating the punishment of an offence is not ex post facto; on the contrary, it is an act of clemency. A law, which changes the punishment from death to imprisonment for life, is a law mitigating the punishment, and therefore not ex post facto." Shaw, C.J., in *Commonwealth* v. *Wyman,* 12 Cush. 237, 239.

The declaration of permanent ineligibility for parole is not an ex post facto law as applied to the defendant. At the time of the murder his rights under a conviction of murder in the first degree were confined to a mandatory sentence of death. G. L. (Ter. Ed.) c. 265, § 2. He would not have had the benefit of G. L. (Ter. Ed.) c. 127, § 154A, inserted by St. 1935, c. 225, as amended by St. 1939, c. 451, § 53. In the absence of executive clemency, he could never have received parole. Now that he has been made the beneficiary of a statute permitting imprisonment for life, he cannot complain that the benefits were not even greater.

5. Strictly speaking, this is not a capital case. See *Commonwealth* v. *Coggins,* 324 Mass. 552, 556. While, therefore, we are not permitted to exercise the power vested in us by G. L. (Ter. Ed.) c. 278, § 33E, as amended by St. 1939,

c. 341 (*Commonwealth* v. *Cox*, 327 Mass. 609, 614), we see no harm in stating that we are of opinion that there has been no miscarriage of justice.

*Judgment affirmed.*