ALEXANDER ALDOUPOLIS vs. COMMONWEALTH
(and four companion cases[1]).

Suffolk. February 2, 1982. — May 13, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Practice, Criminal,* Sentence. *Rape. Constitutional Law,* Double jeopardy. *Statute,* Construction. *Rules of Criminal Procedure.*

The language of G. L. c. 279, § 1, prohibiting a judge from imposing a suspended sentence upon a defendant convicted of a crime "punishable by death or imprisonment for life" did not prohibit suspending the execution of sentences of imprisonment imposed upon defendants convicted of rape under a statute prescribing "imprisonment . . . for life or for any term of years." [263-267] NOLAN, J., dissenting.

A judge, upon his own motion, had authority under Mass. R. Crim. P. 29 to revoke suspended sentences lawfully imposed upon criminal defendants following their pleas of guilty and to impose more severe sentences, notwithstanding the partial execution of the defendants' original sentences. [268-271]

Revocation of suspended sentences lawfully imposed upon criminal defendants after pleas of guilty, and the imposition of new sentences to terms of imprisonment, did not violate the defendants' Federal constitutional guaranty against double jeopardy, where the facts presented no issue of multiple punishment of the defendants [271-274], and where, in light of the judge's power to revise sentences during the sixty-day period provided by Mass. R. Crim. P. 29, the defendants could have had no expectation of finality in their original sentences [274-275].

A judge who, on his own motion pursuant to Mass. R. Crim. P. 29, seeks to revise or revoke criminal sentence must give the defendant adequate notice of the proceeding and an opportunity to be heard thereat, and should state on the record the reasons why it appears that "justice may not have been done" by the original sentence. [275-276]

CIVIL ACTIONS commenced in the Supreme Judicial Court for the county of Suffolk on October 9, 1981, October 13, 1981, October 14, 1981, and October 19, 1981.

---

[1] The companion cases are by Richard Dovel, Mark Savoy, John Strickland, and Robert J. Tarr against the Commonwealth.

The cases were reported by *Lynch*, J.

*Stephen Hrones* for Alexander Aldoupolis.

*Joseph R. Welch* for Robert J. Tarr.

*Marie T. Buckley* for Richard Dovel.

*William H. Pritchard* for John Strickland.

*P. J. Piscitelli* (*J. Russell Hodgdon* with him) for Mark Savoy.

*Charles J. Hely*, Assistant District Attorney, for the Commonwealth.

*Barbara A. H. Smith*, Assistant Attorney General, for the Attorney General, intervener.

*Anthony M. Traini*, for Massachusetts Association of Criminal Defense Lawyers, amicus curiae, submitted a brief.

LIACOS, J.  A grand jury indicted the defendants on August 5, 1980, for rape, unnatural rape, and malicious destruction of property.  On October 5, 1981, each defendant pleaded guilty to the charges.[2]  The judge accepted their pleas and sentenced each to a suspended sentence of from three to five years at the Massachusetts Correctional Institution, Walpole, two years' probation, and imposed court costs of $500.[3]  Subsequently, the defendants reported to the probation officer, signed probation contracts, and made partial payments of the court costs.

On October 8, 1981, counsel for each defendant was notified to appear in court the following day.  Less than twenty-four hours' notice was given of this hearing, and the purpose of the hearing was not disclosed.  On October 9, 1981, the judge, acting under the authority of Mass. R. Crim. P. 29, 378 Mass. 899 (1979), revoked the suspension of the defendants' sentences and ordered the defendants to stand committed for the three-to-five-year terms, with the provision that each could withdraw his guilty pleas on or before October 13, 1981, and stand trial in February, 1982.

---

[2] The defendants were also indicted for assault and battery.  Each such indictment was placed on file without a change of plea.  The defendant Aldoupolis was indicted for kidnapping, which indictment was dismissed.

[3] See G. L. c. 280, § 6.  Court costs were to be paid at the rate of $5 a week over the two-year probationary term.

The judge revoked the suspension of the execution of the sentences (1) noting the "public interest in the sentences" previously imposed; (2) questioning the legality, in light of G. L. c. 279, §§ 1 and 1A, of a suspended sentence for the crime of rape charged under G. L. c. 265, § 22; and (3) "[i]n view of the statements of the District Attorney objecting to my imposing a suspended sentence, as well as a desire to have this case tried on its merits." None of the defendants was afforded an opportunity to argue, respond, or object to the proceedings.[4]

On the same day, the defendant Aldoupolis moved before a single justice of this court to enjoin further proceedings in the Superior Court until the close of business on October 14, 1981.[5] The single justice issued the requested stay, heard oral arguments on October 14, and continued the matter to October 20, 1981. Before that day, all the defendants filed petitions for relief under G. L. c. 211, § 3. The single justice reserved and reported the matter to the full court.[6]

The defendants raise three issues: (1) whether G. L. c. 279, § 1, prohibits the suspension of the execution of a sentence of imprisonment for an offense punishable by life imprisonment or for any lesser term of years; (2) whether the trial judge was authorized under Mass. R. Crim. P. 29, 378 Mass. 899 (1979), to convert the suspended sentence to a sentence of imprisonment without violating the double jeopardy clause of the United States Constitution; and (3) whether, if the answer to issue (2) is in the affirmative, the judge can take the action described on less than twenty-four hours' notice to the defendants, without any prior notifica-

---

[4] The defendants Aldoupolis and Dovel subsequently filed written motions to record their objections.

[5] Prior to a hearing on this motion the defendants Dovel, Tarr, and Savoy filed motions to intervene. The defendant Strickland filed a petition for relief under G. L. c. 211, § 3. The single justice also allowed the Attorney General to intervene on behalf of the Commonwealth.

[6] In addition to the briefs of the parties, we acknowledge the assistance of an amicus brief filed by the Massachusetts Association of Criminal Defense Lawyers.

tion of the purpose of the hearing, and without the defendants' having an opportunity to be heard at the hearing.

Because the issues before the court are strictly those of law, a recitation of the facts of the substantive crimes involved is unnecessary. We turn directly to the legal questions raised on this report.

1. *G. L. c. 279, § 1.* General Laws c. 279, § 1, as amended through St. 1975, c. 347, provides in pertinent part: "When a person convicted before a court is sentenced to imprisonment, the court may direct that the execution of the sentence, or any part thereof, be suspended and that he be placed on probation for such time and on such terms and conditions as it shall fix. . . . The provisions of this section shall not permit the suspension of the execution of the sentence of a person convicted of a crime punishable by death or imprisonment for life." At the time the offense was committed, the rape statute provided: "Whoever has sexual intercourse or unnatural sexual intercourse with a person, and compels such person to submit by force and against his will, or compels such person to submit by threat of bodily injury, shall be punished by imprisonment in the state prison for life or for any term of years." G. L. c. 265, § 22, as then amended by St. 1974, c. 474, § 1.

General Laws c. 279, § 1, prohibits the granting of a suspended sentence when a person is convicted of a crime "punishable by death or imprisonment for life." The words "punishable by death or imprisonment for life" may be clear standing alone, but the applicability of G. L. c. 279, § 1, to a variety of statutorily proscribed offenses is not. The parties argue the question whether the prohibition against suspension of a sentence is applicable only to a crime such as murder which is punishable by death or life imprisonment, G. L. c. 265, § 2,[7] or to all crimes that carry the possibility of life imprisonment.[8]

---

[7] See *District Attorney for the Suffolk Dist.* v. *Watson,* 381 Mass. 648 (1980) (held death penalty unconstitutional).

[8] There are various crimes in this Commonwealth that are punishable by imprisonment for life or for any term of years. See, e.g., G. L. c. 265,

The Commonwealth urges the court not to indulge in statutory interpretation, arguing that the meaning of G. L. c. 279, § 1, is clear. "The decisions of [the United States Supreme Court, however,] have repeatedly warned against the dangers of an approach to statutory construction which confines itself to the bare words of a statute . . . for 'literalness may strangle meaning,' *Utah Junk Co.* v. *Porter,* 328 U.S. 39, 44 [1946]." *Lynch* v. *Overholser,* 369 U.S. 705, 710 (1962). Despite its superficial clarity, we find ambiguity in the application of the phrase "death or imprisonment for life." See *Sanker* v. *United States,* 374 A.2d 304, 307 (D.C. Cir. 1977). Put another way, it becomes necessary to clarify the question whether the proscription of G. L. c. 279, § 1, applies only to those crimes for which the punishment provided is "death or imprisonment for life" or also applies to those crimes for which the punishment is "imprisonment for life or for any term of years." Taken in the context of the statutory scheme of punishment, there is ambiguity in the meaning of G. L. c. 279, § 1.

"The words of a criminal statute must be such as to leave no reasonable doubt as to its meaning or the intention of the legislature . . . ." 3 C. Sands, Sutherland Statutory Construction § 59.04, at 13 (4th ed. 1974). Where the statutory language is unclear, we look to outside sources to determine the meaning of the statute. *Barclay* v. *DeVeau,* 384 Mass. 676, 680 (1981). *Massachusetts Mut. Life Ins. Co.* v. *Commissioner of Corps. & Taxation,* 363 Mass. 685, 690 (1973). We turn first to the legislative history of the statute for insight into what the Legislature intended by enacting G. L. c. 279, § 1.

---

§ 13 (manslaughter during commission of offense under G. L. c. 266, §§ 101-102B); § 13B (indecent assault and battery on a child, second offense); § 17 (armed robbery); § 18A (armed assault in a dwelling house); § 21 (confining or putting in fear a person for purposes of stealing); § 22 (rape); § 24 (assault with intent to commit rape, second offense); § 24B (assault on a child with intent to commit rape); § 26 (kidnapping with intent to extort money); § 28 (poisoning with intent to injure); G. L. c. 266, § 14 (burglary, being armed).

The Legislature amended G. L. c. 279, § 1, in 1925 by adding a new paragraph: "The provisions of this section shall not permit the suspension of the execution of the sentence of a person convicted of operating a motor vehicle while under the influence of intoxicating liquor if such offence was committed within a period of six years immediately following his final conviction of a like offence by a court or magistrate of the commonwealth." St. 1925, c. 297, § 2. The following year the Legislature added to the end of the 1925 amendment: "or of a person convicted of a felony if it shall appear that he has been previously convicted of any felony." St. 1926, c. 271, § 2. In 1934 the Legislature added two more categories of crimes in which suspension of execution of the sentence was forbidden: "a crime punishable by death or imprisonment for life or of a crime an element of which is being armed with a dangerous weapon." St. 1934, c. 250, § 1. An amendment in 1936 eliminated the "operating under the influence" category, St. 1936, c. 434, § 2, and one in 1939 added a new category of election law offenses, St. 1939, c. 299, § 5. The last pertinent amendments appear in 1966 and 1967. The second felony category was deleted and the reference to particular sections of the election law was changed in 1966. St. 1966, c. 292. In 1967, the Legislature deleted the election law offenses and the crimes, "an element of which is being armed with a dangerous weapon." St. 1967, c. 333. Thus, the only category of crime remaining for which the suspension of execution of the sentence was prohibited was a crime punishable by death or life imprisonment.

This pattern of amendments is hardly helpful in evidencing the legislative intent on the issue presented for decision. The various amendments, without more, shed no light on the question whether the Legislature deleted all the other categories of offenses because it sought to prohibit suspension of execution of sentences only in murder cases or whether the Legislature intended the language to cover a broad category of felonies. Another provision of the General Laws, G. L. c. 266, § 14, however, indicates that the

former interpretation is closer to the legislative intent underlying G. L. c. 279, § 1.

General Laws c. 266, § 14, defines the elements of the substantive crime of burglary while being armed and burglary coupled with making an assault. The punishment for the crime is "imprisonment in the state prison for life or for any term of not less than ten years." G. L. c. 266, § 14, as amended. The last sentence of § 14 states that "[t]he sentence imposed upon a person who, after being convicted of any offence mentioned in this section, commits the like offence, or any other of the offences therein mentioned, shall not be suspended, nor shall he be placed on probation." *Id.* The quoted sentence was added to the statute by St. 1966, c. 330. Interestingly, as previously stated in this opinion, G. L. c. 279, § 1, was also amended in 1966 by St. 1966, c. 292. Both amendments were approved in the same month of the legislative session. If the Legislature intended that the "death or life imprisonment" language of G. L. c. 279, § 1, be applicable to a crime punishable by life imprisonment or any terms of years, why did it act to amend the burglary statute shortly after amending G. L. c. 279, § 1? The last sentence of G. L. c. 266, § 14, cannot be mere surplusage. "[T]he Legislature in passing the later act must be taken to have had the provisions of the earlier one in mind, and to have intended both acts to operate as parts of one harmonious whole." *Commonwealth* v. *King,* 202 Mass. 379, 388 (1909).[9] See *Eastern Racing Ass'n* v. *Assessors of Revere,*

---

[9] See also G. L. c. 279, § 1A, as amended through St. 1978, c. 478, § 309, providing for suspension of execution of sentence and probation, when a person is convicted and sentenced to "fine and imprisonment." The last sentence of G. L. c. 279, § 1A, states: "This section shall not permit the suspension of the execution of the sentence of any person convicted of a crime punishable by imprisonment for life or of a crime an element of which is being armed with a dangerous weapon, or of any person convicted of any other felony if it shall appear that he has been previously convicted of any felony." These defendants had no prior felony convictions. Also, the omission of the words "or of any term of years" and the proscription of suspended sentences for the most serious offenses and repeat felony offenders seems to corroborate our analysis of legislative intent. Cf. G. L. c. 264, § 2 (treason "shall be punished by imprisonment in the state prison for life").

300 Mass. 578, 581 (1938). 2A C. Sands, Sutherland Statutory Construction § 51.02, at 290 (4th ed. 1973).

We conclude also that the prohibition against suspension of execution of sentences found in G. L. c. 279, § 1, is inapplicable to crimes that carry the possibility of life imprisonment or imprisonment for a term of years by strictly construing the statute in favor of the defendant. "[O]rdinary rules of statutory construction require us to construe any criminal statute strictly against the Commonwealth." *Commonwealth* v. *Devlin,* 366 Mass. 132, 137-138 (1974), citing *Commonwealth* v. *Paccia,* 338 Mass. 4, 6 (1958). In light of the inherent ambiguity regarding the ambit of G. L. c. 279, § 1, resolution must be made in favor of the defendants in this case. See *Commonwealth* v. *Crosscup,* 369 Mass. 228, 234 (1975). See also 3 C. Sands, *supra* at § 59.04, at 13. The sentences originally imposed were legally suspended.[10]

---

[10] The defendants argue on appeal that their suspended sentences were legal on the alternative theory that they ought to benefit from the mitigated penalty provided in the new statute for unaggravated rape. See G. L. c. 265, § 22, as appearing in St. 1980, c. 459, § 6. At the time of the offense, January 23, 1980, former G. L. c. 265, § 22, provided that the punishment for rape was imprisonment for life or any terms of years. At the time of sentencing, October 5, 1981, G. L. c. 265, § 22, had been amended and the offense was divided into two degrees, aggravated and unaggravated rape. The defendants further argue that since the rape indictments alleged no circumstances of aggravation, their pleas of guilty were under G. L. c. 265, § 22 (*b*), unaggravated rape, for which the maximum punishment for a first offender is imprisonment in State prison for not more than twenty years. The defendants contend that the new statute mitigates the punishment for their offense and, as a general rule, the defendants may have the benefit of the mitigating law. See *Commonwealth* v. *Vaughn,* 329 Mass. 333, 338-339 (1952). Hence, they conclude G. L. c. 279, § 1, does not apply. The Commonwealth contends that the new statute is a comprehensive revision of the General Laws pertaining to rape and sexual assault and not merely a change in the punishment for the offense. The Commonwealth further argues that St. 1980, c. 459, § 6, in effect, repealed former G. L. c. 265, § 22, and thus G. L. c. 4, § 6, Second, would be applicable. See G. L. c. 4, § 6, Second (repeal of a statute shall not affect punishment incurred before repeal takes effect). Since we conclude that the sentencing judge acted legally in suspending the defendants' term of imprisonment under the former G. L. c. 265, § 22, we need not reach this issue.

*2. Sentence revision.* Concluding that G. L. c. 279, § 1, does not forbid the imposition of a suspended sentence as punishment for conviction of rape, we turn to the question whether the judge had the power to revise and revoke the defendants' sentences although such sentences were legal. On October 9, 1981, the judge revoked the suspension of the execution of the sentences imposed on October 5, 1981, ordered the defendants to stand committed for terms of from three to five years at the Massachusetts Correctional Institution, Walpole, and, in accordance with Mass. R. Crim. P. 12 (c) (2) (B), 378 Mass. 866 (1979), gave leave to the defendants to withdraw their pleas of guilty. The execution of the State prison sentences was suspended pending appellate review.

The defendants contend that the judge acted illegally in two respects. First, the defendants argue that the judge had no authority under Mass. R. Crim. P. 29 to increase their sentences, once imposed. Secondly, even if a judge could increase a sentence after it was imposed, because the defendants herein had begun to serve their sentences, the judge's action placed them twice in jeopardy. We conclude that the judge had authority under rule 29 to revise the defendants' sentences within sixty days of the imposition of the original sentences, and such action did not violate the defendants' rights against double jeopardy.

*a. Rule 29 of the Massachusetts Rules of Criminal Procedure.* The defendants contend that the trial judge had no authority to act on his own motion pursuant to rule 29 to revise and revoke the defendants' sentences in a way that increased the severity of the sentences. This argument ignores the actual language of rule 29[11] and principally relies on the Reporters' Notes accompanying the rules.

---

[11] Rule 29 (a) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 899 (1979), provides: "The trial judge upon his own motion or the written motion of a defendant filed within sixty days after the imposition of a sentence, within sixty days after receipt by the trial court of a rescript issued upon affirmance of the judgment or dismissal of the appeal, or within sixty days after entry of any order or judgment of an appellate

The Reporters' Notes point out that rule 29 is "drawn in part" from Fed. R. Crim. P. 35. Reporters' Notes to Mass. R. Crim. P. 29, Mass. Ann. Laws, Rules of Criminal Procedure at 474 (1979). The Reporters state further that the rule "governs *reductions* of sentences motivated by demands of fairness," and "[t]hat an increase in the sentence once execution has commenced is not permitted has, however, long been settled" (emphasis supplied). *Id.* at 475. The Reporters' Notes, not officially approved or reviewed by this court, are not binding on this court. Additionally, rule 29, unlike Fed. R. Crim. P. 35, is limited neither to correction of illegal sentences nor to reduction of sentences.[12] Lastly, these Notes were prepared prior to the opinion of the Court in *United States* v. *DiFrancesco*, 449 U.S. 117 (1980), which, as we discuss later, has held that a sentence may, under certain conditions, be increased without violating the double jeopardy clause.

Rule 29 states that "[t]he trial judge upon his own motion" may revise and revoke a defendant's sentence within sixty days after imposition of the sentence. Cf. *Commonwealth* v. *Sitko*, 372 Mass. 305, 312 (1977) (under prior practice, Commonwealth could move for revocation and revision of defendant's sentence within sixty days of imposition). This power is consistent with the general responsibility of a judge to safeguard both the rights of the accused and the interest of the public in the due administration of the law. "The

---

court denying review of, or having the effect of upholding, a judgment of conviction, may upon such terms and conditions as he shall order, revise or revoke such sentence if it appears that justice may not have been done."

[12] Rule 35(b) of the Federal Rules of Criminal Procedure states: "The court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction. The court may also reduce a sentence upon revocation of probation as provided by law. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision."

adversary nature of the proceedings does not relieve the trial judge of the obligation of raising on his or her initiative, at all appropriate times and in an appropriate manner, matters which may significantly promote a just determination of the trial." 1 ABA Standards for Criminal Justice, Special Functions of the Trial Judge, Standard 6-1.1 (2d ed. 1980). See *Bozza* v. *United States*, 330 U.S. 160, 166-167 (1947) ("The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner").

The defendants further contend that because each had already begun to serve his respective lawful sentence, Massachusetts common law prohibits the judge's action in this case. The defendants argue that once the sentence of probation was executed in part, the court had no power to set aside the sentence and impose a new one.

The line of cases that the defendants rely upon begins with *Commonwealth* v. *Weymouth*, 2 Allen 144 (1861). In *Weymouth* the issue presented was whether the judge, after imposing one sentence, acted illegally in increasing the defendant's sentence on the Commonwealth's motion. The court, recognizing "one of the earliest doctrines of the common law," stated that "the record of a court may be changed or amended at any time during the same term of the court in which a judgment is rendered." *Id.* at 145. The court noted that the defendant was not subjected to any greater punishment by the amended sentence than that allowed by law. *Id.* at 147. The court also noted that the defendant's sentence remained wholly unexecuted, and, if the defendant had been committed under the first sentence, that particular factor "might" have changed the result in the case. *Id.* See also *Commonwealth* v. *O'Brien*, 175 Mass. 37 (1899). Because the court did not rely on that factor in concluding that the judge had acted legally, whether the defendant's sentence was executed was not crucial to or part of the holding in the case.[13] *District Attorney for the N. Dist.* v. *Superior Court*, 342 Mass. 119, 122-126 (1961).

---

[13] The reasoning in the text also serves to distinguish *Commonwealth* v. *Foster*, 122 Mass. 317, 323 (1877).

*Commonwealth* v. *O'Brien, supra,* is also distinguisha-ble. In *O'Brien,* the judge, at a later term, increased the defendant's sentence following his appeal. The court, not-ing that the defendant's previous sentence was an illegal one, held that the judge had the power to correct the illegal-ity in this instance. See *Bozza* v. *United States, supra.* The court again stated that "a different question might have arisen" if the sentence had been executed in part. *O'Brien, supra* at 40. "The circumstance that the sentence may have been partly served does not appear to have been treated in the decisions as in any way material." *District Attorney for the N. Dist.* v. *Superior Court, supra* at 122. Thus, this court has never held that the execution of the defendant's sentence is critical to the inquiry of a judge's power to revise and revoke a defendant's sentence. We note also that rule 29 substitutes a fixed time period, i.e., sixty days, for the ex-ercise of a judge's power in lieu of the traditional — and more uncertain — common law period of "term of court." See *District Attorney for the N. Dist.* v. *Superior Court, supra.* The judge here acted promptly and within the time allowed by rule 29.

b. *Double jeopardy.* The defendants next argue that they were placed twice in jeopardy when the judge revoked the suspension of their sentences and imposed prison terms. The Fifth Amendment prohibition against double jeopardy is applicable to the States through the Fourteenth Amend-ment to the United States Constitution. See *Benton* v. *Maryland,* 395 U.S. 784, 793-796 (1969).[14] The constitu-tional guaranty against double jeopardy consists of three separate protections: "It protects against a second prosecu-

---

[14] "In this Commonwealth, the subject of double jeopardy generally has been treated as a matter of common law rather than as a question under the Constitution of the Commonwealth." *Commonwealth* v. *Therrien,* 383 Mass. 529, 532 (1981), citing *Commonwealth* v. *Diaz,* 383 Mass. 73, 82 (1981), and *Commonwealth* v. *Cepulonis,* 374 Mass. 487, 491-492 (1978). See *Gallinaro* v. *Commonwealth,* 362 Mass. 728, 736 (1973); Wilkins, Judicial Treatment of the Massachusetts Declaration of Rights in Relation to Cognate Provisions of the United States Constitution, 14 Suf-folk U.L. Rev. 887, 923 (1980).

tion for the same offense after acquittal. It protects against
a second prosecution for the same offense after conviction.
And it protects against multiple punishments for the same
offense" (footnotes omitted). *North Carolina* v. *Pearce*,
395 U.S. 711, 717 (1969). In other words, "the double
jeopardy clause is a triptych of three separate values: (1) the
integrity of jury verdicts of not guilty, (2) the lawful ad-
ministration of prescribed sentences, and (3) the interest in
repose." Westen, The Three Faces of Double Jeopardy: Re-
flections on Government Appeals of Criminal Sentences, 78
Mich. L. Rev. 1001, 1002 (1980). The first guaranty, viz.,
protection against prosecution after acquittal, is inapplica-
ble in the instant case and thus we limit our discussion to the
latter two aspects of the double jeopardy protection. [15]

(1) *Multiple punishment.* The double jeopardy clause
safeguards a defendant from being twice punished for the
same crime. See, e.g., *Gallinaro* v. *Commonwealth*, 362
Mass. 728, 735 (1973); *Ex parte Lange*, 85 U.S. (18 Wall.)
163 (1873); *United States* v. *Busic*, 639 F.2d 940, 951 (3d
Cir.), cert. denied, 452 U.S. 918 (1981). Once a defendant
has served fully the proper sentence prescribed by law for
the offense committed, the State may not punish him again.
*Id.* The Supreme Court of the United States has defined
multiple punishment as that in excess of what a Legislature
intended to be the punishment for the particular offense.
*Albernaz* v. *United States*, 450 U.S. 333, 344 (1981). Note,
*United States* v. *DiFrancesco*: Court Upholds State Initi-
ated Sentence Appeals, 32 Mercer L. Rev. 1261, 1268
(1981). See also *Commonwealth* v. *Sneed*, 3 Mass. App.
Ct. 33, 34-35 (1975), and cases cited.

In a recent decision, the Supreme Court held that an in-
crease in sentence on appellate review does not constitute
multiple punishment in violation of the double jeopardy
clause. See *United States* v. *DiFrancesco, supra.* The Court

---

[15] A trial judge does not impliedly acquit a defendant of any greater
sentence by explicitly giving him a lower sentence. See *Chaffin* v. *Stynch-
combe*, 412 U.S. 17, 23-24 (1973). Cf. *North Carolina* v. *Pearce*, 395
U.S. 711, 720 (1969).

stated: "[The] conclusion [that it does] appears to be attributable primarily to [the Court of Appeals] extending to an appeal this Court's dictum in *United States* v. *Benz,* 282 U.S. 304, 307 (1931), to the effect that the federal practice of barring an increase in sentence by the trial court after service of the sentence has begun is constitutionally based. The real and only issue in *Benz,* however, was whether the trial judge had the power to *reduce* a defendant's sentence after service had begun. The Court held that the trial court had such power. It went on to say gratuitously, however, *id.,* at 307-308, and with quotations from a textbook and from *Ex parte Lange,* [85 U.S.] 18 Wall., at 167, 173, that the trial court may not *increase* a sentence, even though the increase is effectuated during the same court session, if the defendant has begun service of his sentence. But the dictum's source, *Ex parte Lange,* states no such principle. In *Lange* the trial court erroneously imposed both imprisonment and fine, even though it was authorized by statute to impose only one or the other of these two punishments. Lange had paid the fine and served five days in prison. The trial court then resentenced him to a year's imprisonment. The fine having been paid and the defendant having suffered one of the alternative punishments, 'the power of the court to punish further was gone.' *Id.,* at 176. The Court also observed that to impose a year's imprisonment (the maximum) after five days had been served was to punish twice for the same offense. *Id.,* at 175. The holding in *Lange,* and thus the dictum in *Benz,* are not susceptible of general application. We confine the dictum in *Benz* to *Lange's* specific context" (footnote omitted) (emphases in original). *United States* v. *DiFrancesco,* 449 U.S. at 138-139. Thus the defendants' commencement of execution of their sentences is not a factor that makes an increase in those sentences a violation of the double jeopardy clause. But see *United States* v. *Bynoe,* 562 F.2d 126, 128-129 (1st Cir. 1977).

The defendants herein pleaded guilty, inter alia, to the crime of rape which, at that time, carried the possibility of

a sentence of imprisonment for life or for any term of years. G. L. c. 265, § 22, as then amended by St. 1974, c. 474, § 1. At the hearing, the judge, pursuant to Mass. R. Crim. P. 29, revoked the defendants' suspended sentences and ordered them to stand committed in execution of their sentences. The defendants were not cumulatively sentenced to jail for a greater term than proscribed by the Legislature, thus, they were not punished twice for the same offense.

(2) *Finality.* The defendants contend that their expectation of finality in the original sentences is protected by the double jeopardy clause and this right was violated by the judge's action in this case. The constitutional prohibition against placing a defendant twice in jeopardy "represents a constitutional policy of finality for the defendant's benefit" in criminal proceedings. *United States* v. *Jorn,* 400 U.S. 470, 479 (1971) (plurality). The protection against double jeopardy ensures that the State will not be allowed to make repeated attempts to convict an individual for an alleged offense, thus compelling him to live in a constant state of anxiety and insecurity. *Green* v. *United States,* 355 U.S. 184, 187-188 (1957). See also M. Friedland, Double Jeopardy 4 (1969).

We have in the past stated that "[s]entence is final judgment in a criminal case, and that is the end of the case, *apart from statutory provisions* [and common law exceptions], so far as concerns the usual and ordinary control of the court" (emphasis added). *Fine* v. *Commonwealth,* 312 Mass. 252, 256 (1942). A sentence is final, subject to the limited power of the judge pursuant to Mass. R. Crim. P. 29 to revise and revoke it. This power is limited because it may only be exercised "if it appears that justice may not have been done" within sixty days after imposition of the original sentence. The defendants should not have had an expectation of finality in their sentences in the face of this rule. *United States* v. *DiFrancesco, supra* at 136, appears to be dispositive of the double jeopardy claims of the defendants. There, the Court held that a sentence appealable by the Government by virtue of 18 U.S.C. § 3576 (1970) was not

final until the appeal was consummated, or the time for the appeal had lapsed. The Court concluded, therefore, that the increase of a sentence in such circumstances would not constitute multiple punishment in violation of the double jeopardy clause. *Id.* at 139-140.[16] The conditional nature of a sentence under the sixty-day period for revision or revocation pursuant to rule 29 is analogous. Cf. *Commonwealth* v. *Sawicki*, 369 Mass. 377 (1975). The sixty-day requirement of rule 29, coupled with the required finding that "justice may not have been done," reasonably balances the defendant's interest in finality against society's interest in law enforcement.

3. *Resentencing procedure.* Although we conclude that the sentencing judge herein had the power to vacate the original sentences and impose new ones, the defendants were given neither notice nor an opportunity to be heard at the hearing and, thus, we order resentencing. See *Katz* v. *Commonwealth*, 379 Mass. 305, 316 (1979) (remedy for error in sentencing is resentencing).

A person whose legal rights are to be affected by a hearing should have notice of the issues. Cf. *Hicks* v. *Commonwealth*, 345 Mass. 89, 92 (1962), cert. denied, 374 U.S. 839 (1963). The revision proceeding denied the defendants all of the notice and hearing rights they would have had at an original sentencing proceeding under Mass. R. Crim. P. 28, 378 Mass. 898 (1979), or at a revision proceeding initiated by a defendant's own motion under Mass. R. Crim. P. 29, or at a revision proceeding before the Appellate Division of the Superior Court under G. L. c. 278, §§ 28A-28C. We find nothing in this record to warrant the judge's precipitous action. To construe rule 29 differently from these other sentencing provisions when the trial judge acts on his own motion, would be an anomaly. The judge who seeks to re-

---

[16] We are bound, of course, by the Court's interpretation of the double jeopardy clause. We agree with the view of both the majority and the dissent in *United States* v. *DiFrancesco*, 449 U.S. 117, 133, 147 (1980), that the common law writs of autre fois acquit and autre fois convict are protections against retrial, not resentencing.

vise and revoke on his own motion must give adequate notice and an opportunity to be heard to the criminal defendant. He should also state clearly on the record why it appears that "justice may not have been done" by the terms of the original sentence. "Of course, in [the circumstance where the sentences are] being revised upward, findings and a statement of supporting reasons are important to demonstrate that improper considerations did not motivate the judge's action." *Commonwealth* v. *Sitko*, 372 Mass. 305, 314 (1977). In the circumstances, the judge may conclude that he should recuse himself from participating in further proceedings in these cases.

4. *Disposition.* The sentences are to be vacated and the defendants are to be resentenced in a manner consistent with this opinion.

*So ordered.*

NOLAN, J. (dissenting). I dissent. The rape statute applicable to this case provides as punishment "imprisonment in the state prison for life or for any term of years." G. L. c. 265, § 22, as then amended by St. 1974, c. 474, § 1. At the time of the commission of the rape to which these defendants pleaded guilty, another statute, G. L. c. 279, § 1, provided that the execution of a sentence of a defendant convicted of a crime punishable by death or imprisonment for life shall not be suspended. Under § 22, rape is punishable by life imprisonment. It should follow, therefore, that a sentence for rape whether for life or for any term of years, cannot be suspended. The words "or for any term of years" do not render this crime any less punishable by life imprisonment if a judge chooses to impose a sentence of a term of years. These words simply permit a less drastic sentence. It is the fact that a judge may sentence a defendant to life imprisonment that brings it under G. L. c. 279, § 1.

If the Legislature had intended the interpretation placed on the statute by the court today, it could have changed the

language in one of two ways. First, the statute could have provided that the prohibition against a suspended sentence was operative only if a life imprisonment sentence were actually imposed. Second, the Legislature could have said that any sentence short of life imprisonment might be suspended. It has chosen neither option. However, the court today, by a route too tortuous for me to follow, arrives at an interpretation diametrically opposite the clear commandment of this statute. It refuses to accept the clarity of the language chosen by the Legislature in writing G. L. c. 279, § 1, and embarks on a journey of hermeneutics which leads to a conclusion which could not have been imagined by the lawmakers. The court has read doubt into a statute which is clear. It has constructed barriers to a simple and uncomplicated reading of a statute. The gloss which the court has given to the statute has created the very ambiguity on which it relies when it invokes the canon of strict construction against the Commonwealth. In short, it has taken lucid language and made it murky.

Accordingly, I dissent in the main from part 1 of the opinion. I join in the rest of the opinion except where consistency with my dissent from part 1 demands a different result.