ALEXANDER C. HABEEB *vs.* RETIREMENT BOARD OF QUINCY.

Norfolk. April 7, 1983. — July 8, 1983.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Statute,* Construction. *Retirement. Pension. National Guard. Words,* "Employment."

A veteran's service in the Massachusetts National Guard prior to July 1, 1939, did not entitle him to receive noncontributory retirement benefits, since service in the National Guard does not qualify as "employment" within the meaning of G. L. c. 32, § 60. [635-640]

CIVIL ACTION commenced in the Superior Court Department on September 23, 1981.

The case was heard by *Abrams,* J., on motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Robert J. Muldoon, Jr. (Joshua M. Alper* with him) for the plaintiff.

*Laurence W. Cowley,* Assistant City Solicitor, for the defendant.

NOLAN, J. The sole issue here is whether G. L. c. 32, § 60, bars the plaintiff, Alexander C. Habeeb, from receiving noncontributory veterans' retirement benefits. We hold that it does.

Habeeb is a veteran with more than thirty years of public employment in the Commonwealth. In 1981, Habeeb, then an active school teacher in the Quincy school system, sought a declaratory judgment that his service in the Massachusetts National Guard prior July 1, 1939, qualified as "employment" within the meaning of G. L. c. 32, § 60, the statute which bars veterans from receiving noncontributory retirement benefits if their public employment began after

June 30, 1939. A judge of the Superior Court held that Habeeb's national guard service did not qualify as "employment." The Appeals Court reversed the judgment, stating simply in relevant part that it "reject[ed] the defendant's contention that G. L. c. 33, § 94, which was inserted by St. 1954, c. 590, § 1,[1] has any application to G. L. c. 32, §§ 56-60." *Habeeb* v. *Retirement Bd. of Quincy,* 15 Mass. App. Ct. 902, 903 (1982). We allowed the application for further appellate review filed by the defendant, the retirement board of Quincy (board).[2]

The relevant portions of G. L. c. 33, § 94, and G. L. c. 33, § 88, referred to in § 94, are set forth in the margin.[3]

---

[1] Statute 1954, c. 590, § 1, represented a major recodification of G. L. c. 33, the chapter dealing with the militia. While it is technically correct that the relevant statute was first codified as § 94 in 1954, the statute, in substantially its present form, first appeared in St. 1943, c. 409, § 1, and was codified at that time as G. L. c. 33, § 55F.

[2] Although the board sought further review only as to the effect of G. L. c. 33, § 94, on Habeeb's claim, we granted its application without limitation as to the issues we would consider. See *Ford* v. *Flaherty,* 364 Mass. 382, 386-387 (1973) (ordinarily all issues before the Appeals Court are before the Supreme Judicial Court when leave to obtain further appellate review is granted). Because this issue is dispositive of Habeeb's claim, however, we do not reach other issues raised before the Appeals Court.

[3] General Laws c. 33, § 94, as appearing in St. 1954, c. 590, § 1, provides in pertinent part: "No person performing any services under section eighty-eight shall, by reason of such services, be deemed to be an employee of the commonwealth or, if not already an officer or enlisted person of the armed forces of the commonwealth, to be such an officer or enlisted person, or to be entitled to receive any pension or retirement allowance from the commonwealth, or to have acquired any right, or to be entitled to receive any other benefit or compensation."

General Laws c. 33, § 88, as amended through St. 1977, c. 68, in turn, provides in pertinent part: "An officer or enlisted person of the armed forces of the commonwealth, while performing any military duty lawfully ordered under any provision of this chapter, or a person not a member of the armed forces of the commonwealth, but who is the owner, or is employed by the owner of a motor vehicle lawfully loaned to or hired by the commonwealth under section eighty-nine and whose services are loaned or given to the commonwealth for any purpose set forth in said section, or a person rendering assistance to any of the armed forces of the commonwealth in connection with the use of a motor vehicle under any provision of section eighty-nine by request or order of any responsible of-

The board contends simply that the Commonwealth's militia is a statutorily unique organization and that the plain language of G. L. c. 33, §§ 88 & 94, expresses the Legislature's intent that persons performing services under § 88 are not to be considered State employees for purposes of retirement benefits. Habeeb, on the other hand, argues that § 94 "applies only to persons seeking disability compensation for service-related motor vehicle injuries" and that the legislative history of §§ 88 and 94 makes clear that the Legislature did not intend "to deprive otherwise eligible employees of non-disability related benefits in a portion of a statute which has dealt from its origin exclusively with the subject of disability claims derived from motor vehicle accidents." While we think that the language of §§ 88 and 94 is less than plain,[4] we conclude that the legislative history of

---

ficer of said armed forces and who by reason of such voluntary action, employment or assistance and without fault or neglect on his part, receives any injury, is disabled, or contracts any sickness or disease, incapacitating him from pursuing his usual business or occupation, shall, during the period of such incapacity, receive compensation . . . ."

[4] Our principal difficulty in construing §§ 88 and 94 stems from the dual use of the word "services." In § 94 the word "services" seemingly is used as a generic term to indicate any of a number of "services" set forth in § 88. However, the word "services" in § 88 is specific — used only for persons "whose services are loaned or given to the commonwealth for any purpose set forth in [§ 89]."

If we were to read the word "services" in § 94 to refer only to services "loaned or given," neither officers and enlisted persons in the militia nor persons "rendering assistance . . . by request or order" to the militia, as described in § 88, would be included within § 94. While such an exclusion might be understandable in the case of officers and enlisted persons if they were already considered to be employees of the Commonwealth, it is not so understandable in the case of persons "rendering assistance" to the militia, since their status would be left in doubt by such a reading. Further, if "services" in § 94 were read to refer only to those persons whose services were "loaned or given," the reference in § 94 to those persons not already officers or enlisted persons would be rendered meaningless or superfluous because the reference in § 88 to persons "whose services are loaned or given" is a reference to "a person not a member of the armed forces." See *Casa Loma, Inc.* v. *Alcoholic Beverages Control Comm'n,* 377 Mass. 231, 234 (1979); *Insurance Rating Bd.* v. *Commissioner of Ins.,* 356 Mass. 184, 189 (1969).

§§ 88 and 94 indicates that the Legislature did intend to include officers and enlisted persons of the Commonwealth's militia within the bar erected by § 94.

Mindful that it is our duty to "construe the statute to effectuate the objectives of its framers," *James J. Welch & Co. v. Deputy Comm'r of Capital Planning & Operations*, 387 Mass. 662, 666 (1982), we turn to the legislative history and context of §§ 88 and 94 for insight into those objectives. See *Aldoupolis* v. *Commonwealth*, 386 Mass. 260, 264, cert. denied, 459 U.S. 864 (1982).

In 1943, the Legislature enacted St. 1943, c. 409 (1943 Act), an emergency provision entitled "An Act to provide for the acquiring of motor vehicles or for obtaining the use thereof by the military division of the executive department and for the settlement of certain claims against the commonwealth arising out of the operation of motor vehicles."[5] Section 1 of this act amended G. L. c. 33 by inserting after § 55 new sections 55A through 55F. Until that time, G. L. c. 33, § 55, provided only for compensation benefits to members of the organized militia injured or disabled in the performance of their duty. The newly inserted § 55C was substantially the same as present G. L. c. 33, § 88.[6] Section 1 of the 1943 Act also inserted in G. L. c. 33 a new provision, § 55F, which was, in relevant part, essentially the same as the present G. L. c. 33, § 94.[7] Section 1 made no other reference to the employment status of members of the Commonwealth's militia.

Sections 3 and 4 of the 1943 Act, however, are particularly revealing as to the Legislature's intent. Section 3 amend-

---

[5] The preamble also referred to the need for a "just, adequate and prompt method of acquiring and of operating motor vehicles . . . and of disposing of claims . . . caused by such operation."

[6] In 1954, c. 33 was restructured and recodified by St. 1954, c. 590, § 1. The substantive provisions of former §§ 55 and 55C were recodified as § 88, which was substantially the same as former § 55C with the addition of some qualifying language from former § 55.

[7] Section 55F was recodified as G. L. c. 33, § 94, by St. 1954, c. 590, § 1.

ed G. L. c. 12, § 3B, which defined the obligation of the
Attorney General to defend State employees or officers, at
their request, in actions arising out of their use of State-
owned motor vehicles, by adding a new paragraph which
provided in part that "[f]or the purposes *only* of this section,
an officer, or soldier of the military forces of the com-
monwealth, . . . shall while performing any lawfully
ordered military duty be deemed to be an officer or
employee of the commonwealth" (emphasis added).[8] Sec-
tion 4 of the 1943 Act amended G. L. c. 260, § 4, the
statute which established time limitations for the com-
mencement of certain actions against, among others, State
officers and employees, by adding a new sentence which
provided that "[f]or the purposes *only* of this section, an of-
ficer or soldier of the military forces of the commonwealth,
. . . shall while performing any lawfully ordered military

---

[8] In 1947, the Legislature added § 3C to c. 12. St. 1947, c. 337. The
new section authorized the Attorney General to settle certain claims
against "[a]ny officer or employee of the commonwealth, or of the
metropolitan district commission" if that party requested representation
and authorized settlement. Members of the Commonwealth's militia
were not mentioned. In 1968, the Legislature amended G. L. c. 12,
§ 3B, to read in pertinent part as follows: "For the purpose of this section
and section three C an officer, or soldier of the military forces of the com-
monwealth, as defined in chapter thirty-three, shall while performing
any lawfully ordered military duty be deemed to be an officer or
employee of the commonwealth and a motor vehicle given to the com-
monwealth, loaned to it or hired or purchased by it shall, while being
used in the performance of any lawfully ordered military duty, be deemed
to be a motor vehicle owned by the commonwealth." St. 1968, c. 207.
We think that the Legislature's delay of over twenty years after enactment
of G. L. c. 12, § 3C, before including members of the Commonwealth's
militia within its scope indicates that the Legislature did not consider
members of the militia to be public employees other than for specified,
limited purposes.

In 1978, the Legislature repealed G. L. c. 12, §§ 3A-3D. St. 1978,
c. 512, § 1. The subject matter of former G. L. c. 12, §§ 3A-3D, is
covered in substance by G. L. c. 258, as appearing in St. 1978, c. 512,
§ 15 (striking out and replacing former G. L. c. 258). "[O]fficers or
soldiers of the military forces of the commonwealth" are included within
the definition of "[p]ublic employee" as that term is used in c. 258. G. L.
c. 258, § 1.

duty be deemed to be an officer or employee of the commonwealth" (emphasis added).

A further indication as to the Legislature's intent is found in its enactment of St. 1963, c. 606 (1963 Act), which provides: "Notwithstanding the provisions of any general or special law to the contrary, any person who is now a member of the state retirement system and who was employed by the Massachusetts National Guard as a caretaker or air technician prior to July first, nineteen hundred and thirty-nine, shall be considered to have been employed by the commonwealth prior to said date, and shall be subject to the provisions of sections fifty-six to fifty-nine, inclusive, of chapter thirty-two of the General Laws, and may, if otherwise eligible, be retired under said sections." It is evident that, if caretakers and air technicians were already considered to be employees of the Commonwealth, this legislation would be superfluous. "An intention to enact a barren and ineffective provision is not lightly to be imputed to the Legislature." *Insurance Rating Bd.* v. *Commissioner of Ins.*, 356 Mass. 184, 189 (1969). We think the more reasonable interpretation, especially in view of the disclaimer with which the 1963 Act begins, is that caretakers and air technicians were not considered to be employees of the Commonwealth prior to the 1963 Act.[9]

---

[9] In making his decision, the trial judge ruled that the 1963 Act "supports the negative inference that persons employed by the Massachusetts National Guard that do not fall within the job categories specified in said Act are *not* 'employees' within the meaning of G. L. c. 32, § 60" (emphasis in original). The Appeals Court held that the 1963 Act was intended only "to ensure the eligibility of these two classes of employees, perhaps civilians, whose coverage under G. L. c. 32, § 60, might otherwise have been considered in doubt." *Habeeb* v. *Retirement Bd. of Quincy*, 15 Mass. App. Ct. 902, 903 (1982). We agree with the Superior Court judge's interpretation of this act. Although Habeeb claims that such an interpretation would render the 1963 Act "obviously unconstitutional" because the Legislature could not have had a rational basis for singling out caretakers or air technicians, the record is void of facts which would support this claim. Habeeb's burden, assuming he would have standing to challenge the 1963 Act, "is not sustained by generalities, whether of law or fact. The presumption of constitutionality can be overcome only by specific allegations." *Commonwealth* v. *Franklin Fruit Co.*, 388 Mass. 228, 235 (1983), quoting *Commonwealth* v. *Chamberlain*, 343 Mass. 49, 52 (1961).

"[I]ndividual statutory provisions related to the same general area must be read 'as a whole . . . to the end that, as far as possible, the [entire legislative program] will constitute a consistent and harmonious whole.'" *Jones* v. *Wayland,* 380 Mass. 110, 118 (1980), quoting *Haines* v. *Town Manager of Mansfield,* 320 Mass. 140, 142 (1946).[10] Guided by this principle, we are led by our reading of the 1943 Act and the 1963 Act to the conclusion that the Legislature intended that officers and enlisted persons in the Commonwealth's militia should be considered as State officers or employees only for the limited purposes expressed in specific legislative enactments such as §§ 3 and 4 of the 1943 Act. It follows that the Legislature intended to include the Commonwealth's military officers and enlisted persons within the bar erected by G. L. c. 33, § 55F, as presently codified at G. L. c. 33, § 94. While it may be argued that this interpretation conflicts with the title and emergency preamble of the 1943 Act, we think that the Legislature's simultaneous substantive amendments, and its later enactment of the same subject, are more authoritative indications of its intent than the title and prefatory language which the Legislature gave to its amendments.[11]

*Judgment of the Superior Court affirmed.*

---

[10] This rule has particular force when the statutes to be construed were enacted simultaneously, as is the case here with the 1943 legislation. See 2A C. Sands, Sutherland Statutory Construction § 51.03, at 298-299 (4th ed. 1973). See also *Aldoupolis* v. *Commonwealth,* 386 Mass. 260, 266 (1982) (amendments approved within same month of legislative session); *Jones* v. *Wayland, supra* at 118 n.12 (statutes originally enacted on same day).

[11] Any member of the Massachusetts National Guard who qualifies as an "employee" of the Commonwealth under G. L. c. 32, § 1, is not affected by our holding. The bar of G. L. c. 33, § 94, holds only that persons who perform "services" under G. L. c. 33, § 88, should not be considered as State employees or as eligible to receive retirement benefits by reason of that service alone. Section 94 would not bar persons who were otherwise deemed State employees from receiving any retirement or other benefits for which they may be eligible. Habeeb does not argue, and no fact in the record indicates, that he would qualify as an "employee" within the definition of that term as contained in the pertinent part of G. L. c. 32, § 1.