## COMMONWEALTH *VS.* LAVAR LEGGETT.

No. 10-P-1092.

Suffolk. October 11, 2011. - November 14, 2012.

Present: BERRY, COHEN, & SIKORA, JJ.

*Practice, Criminal,* Double jeopardy, Probation, Sentence. *Constitutional Law,* Double jeopardy, Sentence.

Principles of double jeopardy, and of due process, which this court treated as indistinguishable, did not prohibit a judge's revision, pursuant to a criminal defendant's motion for resentencing filed approximately eight years after his convictions, of original component sentences of from nine to ten years and from one to two years in State prison, which had run concurrently with a sentence of from nineteen to twenty years, to concurrent terms of five years and two years of postrelease probation, respectively, where the revision satisfied criteria of procedural and substantive fairness, in that it did not violate the defendant's legitimate expectation of finality, was quantitatively fair, and was free of retaliatory vindictiveness; and in that its fairness was reinforced by the nature of probationary jeopardy; and where a rule of component sentence finality would operate redundantly with other limits on revised sentences and would deprive resentencing judges of the benefits of discretionary flexibility. [734-741] BERRY, J., dissenting.

INDICTMENTS found and returned in the Superior Court Department on July 19, 1996.

Following review by this court, 73 Mass. App. Ct. 1118 (2009), a resentencing hearing was held before *Peter M. Lauriat,* J., and motions for postconviction relief and for reconsideration were considered by him.

*Colleen A. Tynan* for the defendant.

*Zachary Hillman,* Assistant District Attorney, for the Commonwealth.

SIKORA, J. This appeal requires us to measure a reconstructed sentencing scheme against the standards of the prohibition against double jeopardy. After service of a portion of his original sentencing program upon four related convictions, the defendant

moved successfully for resentencing by a different judge. He contends that the resulting scheme punishes him twice for two of the convictions and thereby violates the ban against double jeopardy. No prior Massachusetts decision appears to have encountered our question squarely. However, Federal precedents provide substantial guidance. For the following reasons, we affirm the judge's denial of relief from the second sentencing scheme.

*Background.* 1. *Underlying convictions.* The convictions of the defendant, Lavar Leggett, resulted from a Superior Court jury trial presenting the following evidence. On June 22, 1996, at approximately 3:50 A.M., Joseph Cassell, the victim, got out of a taxicab at the corner of Blue Hill Avenue and Johnston Road in the Dorchester section of Boston. As Cassell walked down Johnston Road in the direction of his home, he heard shouts and then gunshots. He then saw two persons walking toward him; at that point he began to run toward his home. As Cassell ran, he received a shot in the back and fell to the ground. As he began to get up, he saw a gun in his face. Cassell grabbed the barrel and pushed it away. He started to run again. He then absorbed three shots, one in the scapula, one in the upper middle back, and one in the right arm. As he staggered home, he noticed that the assailants had fled toward Blue Hill Avenue. Cassell underwent six days of hospital treatment for his injuries. He returned subsequently for removal of the bullet from his right arm.

At the time of the shooting, Boston police Detectives Brian Black and Kevin McGoldrick were traveling in an unmarked cruiser along Blue Hill Avenue toward Johnston Road. They saw two individuals sprint across Blue Hill Avenue, followed seconds later by a third person. The third figure, later identified as the defendant, was holding his right arm down by his side as he ran. The detectives pursued the individuals; McGoldrick remained in the police cruiser, and Black chased the defendant on foot. McGoldrick alerted Black that the defendant had a gun in his right hand. As the defendant raced away from Black he discarded the weapon. McGoldrick intercepted and arrested the defendant, and placed him in the cruiser. Detective Black then returned to the path of the chase and recovered a .22 caliber revolver. The serial number on the gun had been "obliterated."

Ballistics testing later showed that recovered shell casings and the bullet removed from the victim's arm were fired from the recovered revolver.

2. *Procedural history.* Approximately one month later a Suffolk County grand jury returned four indictments against the defendant: possession of a firearm without a license, G. L. c. 269, § 10(*a*) (count 1); receiving a firearm with knowledge of its defaced serial number, G. L. c. 269, § 11C (count 2); assault and battery by means of a dangerous weapon (a handgun), G. L. c. 265, § 15A (count 3); and assault while armed with a firearm and with intent to murder, G. L. c. 265, § 18(*b*) (count 4).

In November of 1997, a Superior Court jury convicted the defendant of all four charges. The judge imposed the following sentences: (a) upon the offense of armed assault with intent to murder, a term of from nineteen to twenty years in State prison; (b) upon the offense of assault and battery by means of a dangerous weapon, a consecutive term of from nine to ten years in State prison; (c) upon the conviction of unlawful possession of a firearm, a sentence of from four years and eleven months to five years in State prison to run from and after the sentence for assault and battery by means of a dangerous weapon; and (d) upon the conviction of knowing receipt of a firearm with a defaced serial number, a sentence of from one to two years to run concurrently with the sentence for unlawful possession of a firearm.

In 1999, this court affirmed the defendant's convictions. See *Commonwealth* v. *Morris*, 48 Mass. App. Ct. 1113 (1999) (companion case). The Supreme Judicial Court denied further appellate review. See *Commonwealth* v. *Leggett*, 431 Mass. 1102 (2000). In 2000, the Appellate Division of the Superior Court revised the original sentencing scheme so as to have the three lesser sentences run concurrently with and within the term of from nineteen to twenty years for the conviction of armed assault with intent to murder.[1] Then, in 2005, the defendant moved for resentencing upon the ground of improper comments made by the judge during the original sentencing hearing. The trial judge denied his motion. On appeal, this court vacated the sentences and remanded to the Superior Court for resentencing

---

[1]The defendant sought review of the sentences by the Appellate Division of the Superior Court pursuant to G. L. c. 278, §§ 28A-28C.

by a different judge. See *Commonwealth* v. *Leggett*, 73 Mass. App. Ct. 1118 (2009).

In October of 2009, a new judge resentenced the defendant as follows: (a) a term of from sixteen years to sixteen years and one day for armed assault with intent to murder, retroactive to the date of arrest on June 22, 1996; (b) a five-year probationary period for assault and battery by means of a dangerous weapon, from and after completion of the prison term for armed assault with intent to murder; and (c) a two-year probationary period for knowing receipt of a firearm with a defaced serial number, concurrent with the probationary period for assault and battery by means of a dangerous weapon.[2,3]

By submission of a pro se letter to the resentencing judge in February of 2010, the defendant argued that he had fully served the original sentence of from nine to ten years upon the conviction of assault and battery by means of a dangerous weapon (extending concurrently from 1996 to 2006, as ordered by the Appellate Division) and that the revised sentence of a five-year postrelease probation constituted unlawful multiple punishment for the same offense. The judge treated the letter as a motion under Mass.R.Crim.P. 30(a), as appearing in 435 Mass. 1501 (2001), to correct an unlawful sentence, and denied it. The defendant submitted a pro se motion for reconsideration; the judge denied it also.

The defendant appeals from those denials. Now with the assistance of counsel, he maintains that both postrelease probationary periods imposed by the resentencing judge (the five-year probationary term for assault and battery by means of a dangerous weapon, and the concurrent two-year probationary term for knowing possession of a firearm with a defaced serial number)

---

[2]In addition, the defendant was sentenced to a term of from three years to three years and one day for possession of a firearm without a license, concurrent with the sentence for armed assault with intent to murder. The sentence for possession was also retroactive to the date of arrest, and was deemed served at the time of resentencing.

[3]The defendant's sentencing memorandum on remand had requested that the sentence on each of his convictions be computed in accordance with the Massachusetts Sentencing Guidelines. The defendant maintained that under the guidelines applicable to his criminal history, his resentencing should reduce to time served as to all of the convictions.

operate redundantly with the terms of incarceration already completed, punish him twice for the underlying offenses, and therefore subject him to double jeopardy and deny him due process of law. In February of 2011, the defendant gained release from prison; he is currently serving the probationary periods of the resentencing scheme.

*Analysis.* The defendant invokes the protection against double jeopardy provided by both Federal and Massachusetts law. The Fifth Amendment to the United States Constitution states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." That clause applies to the States through the due process clause of the Fourteenth Amendment. *Benton* v. *Maryland,* 395 U.S. 784, 794 (1969). While the guarantee against double jeopardy does not appear expressly in the Declaration of Rights of the Massachusetts Constitution, it is an explicit statutory right and a deeply rooted common-law principle. See G. L. c. 263, § 7;[4] *Thames* v. *Commonwealth,* 365 Mass. 477, 479 (1974); *Commonwealth* v. *Hrycenko,* 417 Mass. 309, 316 (1994); *Commonwealth* v. *Bloom,* 53 Mass. App. Ct. 476, 477 (2001). Under both the Federal and Massachusetts doctrines, the prohibition operates against three categories of jeopardy: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishment for the same offense. *North Carolina* v. *Pearce,* 395 U.S. 711, 717 (1969). *Luk* v. *Commonwealth,* 421 Mass. 415, 419 (1995). *Commonwealth* v. *Bloom, supra.*

Here, the defendant asserts a claim of forbidden multiple punishment. Our analysis treats the Federal constitutional standard and the Massachusetts common-law rule as equivalent in the circumstances of this case.[5] Under Massachusetts law, multiple punishment results from a sentence in excess of the

---

[4]General Laws c. 263, § 7, provides:

"A person shall not be held to answer on a second indictment or complaint for a crime of which he has been acquitted upon the facts and merits; but he may plead such acquittal in bar of any subsequent prosecution for the same crime, notwithstanding any defect in the form or substance of the indictment or complaint on which he was acquitted."

[5]The arguments of the parties rest upon the premise of the application of identical Federal and State law standards to the present circumstances. "The common law is important in the [context of a double jeopardy challenge to a

authorized legislative penalty. *Aldoupolis* v. *Commonwealth*, 386 Mass. 260, 272, cert. denied, 459 U.S. 864 (1982). Under the Federal standard, it will result from a sentence in which "punishment already endured is not fully subtracted" from the new sanction. *North Carolina* v. *Pearce, supra* at 718.

1. *Application of double jeopardy standards to a compound sentencing scheme.* A judge's sentencing scheme for a defendant convicted of multiple offenses at one trial is typically an integrated plan and not a mechanical formation of separate sanctions. See *Wolcott, petitioner*, 32 Mass. App. Ct. 473, 477-478 & n.4 (1992). It materializes from several sources of information including, but not limited to, the aggravating or mitigating circumstances of the underlying offenses; the defendant's criminal history; formal or informal guidelines; and the fundamental criminal law objectives of appropriate incapacitation, deterrence, retribution, and rehabilitation. See *Commonwealth* v. *Goodwin*, 414 Mass. 88, 92-93 (1993); *Commonwealth* v. *White*, 436 Mass. 340, 343 (2002). The components of the scheme work in combination, not isolation. They form a "sentencing package in which sentences on individual counts are interdependent." *United States* v. *Smith*, 115 F.3d 241, 245 n.4 (4th Cir.), cert. denied, 522 U.S. 922 (1997), quoting from *United States* v. *Smith*, 103 F.3d 531, 533 (7th Cir. 1996), cert. denied, 520 U.S. 1248 (1997). See *United States* v. *Hillary*, 106 F.3d 1170, 1172 (4th Cir. 1997); *United States* v. *Benbrook*, 119 F.3d 338, 340 (5th Cir. 1997); *United States* v. *Handa*, 110 F.3d 42, 44 (9th Cir. 1997).

The subtraction of one or more of the scheme's interdependent elements may disrupt its intended proportions and purposes, and warrant its entire reconstruction within statutory limits by the sentencing judge or a successor. Thus, in cases in which a Massachusetts appellate court reverses one or more of several convictions resulting from the same trial, it may remand the case to the trial judge for reconsideration of the entire sentencing structure. See, e.g., *Commonwealth* v. *LeBeau*, 451 Mass. 244, 245, 263 (2008); *Commonwealth* v. *McCourt*, 54 Mass. App. Ct. 673, 673-674, 681-682 (2002), *S.C.*, 438 Mass. 486 (2003).

---

sentence], for our Double Jeopardy Clause was drafted with the common-law protections in mind." *United States* v. *DiFrancesco*, 449 U.S. 117, 134 (1980).

The vacation of a sentencing scheme creates a clean slate for resentencing. See *Commonwealth* v. *White,* 436 Mass. at 344, citing *North Carolina* v. *Pearce,* 395 U.S. at 725-726. See also *United States* v. *Cochran,* 883 F.2d 1012, 1017 (11th Cir. 1989). The concept of the clean slate recognizes the discretionary freedom of the resentencing judge to impose a new structure upon the basis of information generated since the first sentencing so that "the punishment should fit the offender and not merely the crime." *North Carolina* v. *Pearce, supra* at 723, quoting from *Williams* v. *New York,* 337 U.S. 241, 247 (1949). See *Commonwealth* v. *White, supra.*

The double jeopardy limitation upon multiple punishment does not impose "an absolute bar to a more severe sentence." *North Carolina* v. *Pearce, supra.* See *Commonwealth* v. *White, supra.* However, several standards place borders around the clean slate presented to the resentencing judge. First, a convicted defendant's "legitimate expectation" of the finality of punishment limits the new scheme. See *United States* v. *DiFrancesco,* 449 U.S. 117, 137 (1980); *Aldoupolis* v. *Commonwealth,* 386 Mass. at 274-275; *Commonwealth* v. *Woodward,* 427 Mass. 659, 686-687 (1998); *Commonwealth* v. *Jarvis,* 68 Mass. App. Ct. 538, 541 (2007). Resentencing terms beyond the point of a reasonable expectation of finality grounded in the aggregate terms of the earlier punishment, the state of the law, or the degree of partial service of the original punishment may violate the bar against duplicative punishment for the same offense.[6]

Several corollaries qualify the strength of the expectation of finality. A defendant must receive credit for time served. See *North Carolina* v. *Pearce, supra* at 718-719; *United States* v. *Cochran,* 883 F.2d at 1017. However, a legitimate expectation of finality does *not* extend to each individual sentence within an aggregate scheme for multiple convictions. The prisoner does not have a reasonable expectation of finality in any one part or element of the total bundle of sentences but, rather, in the entirety

---

[6]The reasonable expectation of finality operates most forcefully in the circumstance of a single sentence for a single conviction. Once the defendant has completed that sentence, an enlarged sentence would violate that expectation and the double jeopardy limitation. See *United States* v. *Silvers,* 90 F.3d 95, 101 (4th Cir. 1996), and cases cited; *United States* v. *Smith,* 115 F.3d at 246.

of the scheme. See *United States* v. *McClain*, 133 F.3d 1191, 1193-1194 (9th Cir.), cert. denied, 524 U.S. 960 (1998), and cases cited; *United States* v. *Martenson*, 178 F.3d 457, 463-464 (7th Cir. 1999).[7]

Second, the defendant's initiation of a challenge to an original sentence exposes his expectation of finality to some risk. The double jeopardy proscription protects the defendant against governmental oppression; it does not "relieve a defendant from the consequences of his voluntary choice" to invalidate his original punishment. *United States* v. *Scott*, 437 U.S. 82, 99 (1978). The expectation is "wholly absent where, as here, the defendant requests that his prior sentences be nullified." *United States* v. *Cochran*, 883 F.2d at 1017. Compare *United States* v. *Bello*, 767 F.2d 1065, 1070 (4th Cir. 1985) (resentencing on remaining conviction permissible upon successful appeal from convictions on lesser included offenses); *United States* v. *McClain*, 133 F.3d at 1193-1194.

Finally, the reconstructed scheme must be quantitatively fair. The resentencing program should not become drastically greater than the original. It must be free of retaliatory vindictiveness. A resentencing appreciably greater than the original requires the support of specific reasoning and stated information. See *North Carolina* v. *Pearce, supra* at 726 (double jeopardy grounds); *United States* v. *Lundien*, 769 F.2d 981, 986-987 (4th Cir. 1985), cert. denied, 474 U.S. 1064 (1986) (due process grounds); *Commonwealth* v. *Hyatt*, 419 Mass. 815, 823 (1995) (as a

---

[7]In the *Martenson* case, the resentencing judge vacated a concurrent sentence of twelve years' incarceration upon one of several convictions and substituted a probationary period of five years and an order of restitution so as to avoid violation of a governing statute. The "rebundled" multicount package properly apportioned the judge's originally intended results of (1) twelve years of incarceration, (2) followed by five years of probation, (3) accompanied by a payment of restitution of $3.5 million. The Federal Circuit Court of Appeals affirmed the trial judge's reconstruction of the package because it merely rearranged the sanctions under various counts of conviction and did not enlarge the aggregate sanctions beyond their original size and the defendant's reasonable expectations. 178 F.3d at 461-464. That case resembles ours because it substituted a postrelease probationary term for a concurrent term of imprisonment served already at the time of resentencing. In *Martenson*, however, the resentencing package retained the identical sanctions, while in our case, the new package reduced the total period of incarceration from nineteen-to-twenty years to sixteen years, and added a period of probation.

common-law rule, harsher sentence by second judge after retrial and reconviction requires statement of reasoning and of new information).

2. *Due process consideration.* The defendant contends summarily that Federal and Massachusetts due process standards also require resentencing fairness. That line of argument appears more general and less developed than the body of double jeopardy precedents. One Federal decision addresses due process in tandem with double jeopardy reasoning. "[D]ue process may . . . be denied when a sentence is enhanced after the defendant has served so much of his sentence that his expectations as to its finality have crystallized and it would be fundamentally unfair to defeat them." *United States* v. *Lundien,* 769 F.2d at 987. The defendant has not cited any due process authority upon the issue of resentencing distinctive from his more specific double jeopardy argument. In these circumstances, we treat the double jeopardy and due process rationales as indistinguishable.

3. *Application to the present resentencing.* Here, the resentencing violated neither a constitutional nor a common-law standard of fairness. The judge reduced the period of incarceration for armed assault with intent to murder from nineteen-to-twenty years to sixteen years. For the concurrent term of from nine to ten years for assault and battery by means of a dangerous weapon, he substituted a probationary period of five years. For the concurrent term of from one to two years for knowing receipt of a firearm with a defaced serial number, he substituted a probationary period of two years to run concurrently with the five years' probation for assault and battery by means of a dangerous weapon.

The procedure and substance of that revision satisfied the criteria of fairness. The defendant, and not the Commonwealth, proposed the nullification of the existing construct and the creation of the clean slate.[8] For his entire time of incarceration, he received credit toward his anchoring sentence for armed assault with intent to murder. He served no sterile or "dead" time. He was not entitled to concurrent credit for the specific component sentences for the convictions of assault and battery by

---

[8]Our case does not belong to the category of violation of straight probation in which the Commonwealth proposes revocation and sentencing upon a clean slate. Contrast *Commonwealth* v. *Bruzzese,* 437 Mass. 606, 617-618 (2002).

means of a dangerous weapon and knowing possession of a firearm with a defaced serial number. His legitimate expectation of finality would rest at nineteen to twenty years of confinement set by the Appellate Division of the Superior Court. In that light, the resentencing result of sixteen years of incarceration and five years of probation does not violate any measure of quantitative fairness. The outcome is free of any sign of retaliatory vindictiveness.

Finally, the nature of probationary jeopardy reinforces the fairness of the resentencing. In effect, the resentencing judge replaced four years of imprisonment with five years of probation. The defendant is not proposing to rescind that exchange. He wishes to keep the four-year reduction but to eliminate the five years of probationary accountability. Probation blends benefits and risks. It attempts to rehabilitate the prisoner by supervised resumption of freedom. See *Commonwealth* v. *Goodwin*, 458 Mass. 11, 15 (2010), quoting from *Mariano* v. *Judge of Dist. Court of Cent. Berkshire*, 243 Mass. 90, 93 (1922) ("purpose [of probation] . . . is to enable the person to get on his feet, to become law abiding and to lead a useful . . . life"). At the same time, it carries the risk of violation and resulting incarceration. It embodies that element of jeopardy. See *McHoul* v. *Commonwealth*, 365 Mass. 465, 469 (1974); *Commonwealth* v. *Bruzzese*, 437 Mass. 606, 617 (2002). However, as the resentencing judge was entitled to consider, the law creates probationary jeopardy, but the defendant controls it. The probationer takes responsibility for his continuing freedom. As a practical matter, he proceeds not in jeopardy from the government, but from himself.

We have weighed the reasoning of the dissenting opinion. For several reasons, we find it unpersuasive. It reduces to a single point: that a reasonable expectation of finality vests in a fully served component sentence of a scheme of multiple sentences; and that a resentencing judge's use of that component in any revised scheme therefore violates the rule against double jeopardy.

No controlling authority supports that view. In the chain of review of Massachusetts trial court decisions, neither the United States Supreme Court, the Supreme Judicial Court, nor our court has adopted that position. Among the Federal Circuit

Courts of Appeals, only one has done so, the Fourth Circuit in
*United States* v. *Silvers*, 90 F.3d 95, 101 (4th Cir. 1996), as
cited by the dissent.[9] Four other Circuit Courts of Appeals have
rejected the idea. See *United States* v. *Benbrook*, 119 F.3d 338,
340 (5th Cir. 1997); *United States* v. *Smith*, 103 F.3d 531, 535
(7th Cir. 1997); *United States* v. *Martenson*, 178 F.3d 457, 463-
464 (7th Cir. 1999); *United States* v. *Alton*, 120 F.3d 114, 116
(8th Cir.), cert. denied, 522 U.S. 976 (1997); *United States* v.
*McClain*, 133 F.3d 1191, 1193-1194 (9th Cir. 1997). The *Mc-
Clain* court stated the point concisely.

> "We join [other] circuits in concluding that when a defend-
> ant is convicted of both an underlying offense and [a related
> offense], he reasonably cannot have a legitimate expecta-
> tion of finality in a portion of the total sentence, even if he
> has fully served that portion."

*Id.* at 1194.

In addition, a rule of component sentence finality would oper-
ate redundantly with the restrictions established by a reasonable
expectation of finality for the aggregate scheme, with quantitative
fairness, and with anti-vindictiveness. The defendant's realistic,
and therefore reasonable, reliance rests on the "bottom line" of
the aggregate sanctions and not on its constituent intervals.

Finally, a mechanical rule of component finality would squeeze
a measure of discretion out of the choices available to the
resentencing judge, in the person of either the trial judge
thoroughly familiar with the evidence of the case and the defend-
ant's history and prospects, or in the person of a successor
judge thoroughly informed upon the same subjects. This case il-
lustrates the benefits of flexibility within the limiting criteria of
the case law. An experienced judge shaped a result affording the
defendant four years of freedom and the community five years
of his supervised reentry into society. The judge was able to
convert the component sentence upon the conviction for assault

---

[9]A second Fourth Circuit decision cited by the dissent, see *post* at 745,
*United States* v. *Smith*, 115 F.3d at 246, refers to the *Silvers* rationale but
holds that Smith had not completed his component sentence and did not fall
within its reasoning. *Id.* at 247.

and battery by means of a dangerous weapon to a constructive term of probation.[10] The dissenting approach would eliminate that option and unnecessarily restrict the range of resentencing by prudent trial judges.

*Conclusion.* For these reasons we affirm the order denying the defendant's motion pursuant to Mass.R.Civ.P. 30(a) to correct the resentencing and the denial of the motion for reconsideration of that order.

*So ordered.*

BERRY, J. (dissenting). I differ with the majority's conclusion that the integrated sentencing package theory can resurrect the fully served sentences on the indictments charging knowing receipt of a firearm with a defaced serial number (count 2) and assault and battery by means of a dangerous weapon (count 3).[1] To allow that would, in my opinion and for the reasons stated herein, violate the principle of finality of sentence protected by double jeopardy principles: "[T]here has never been any doubt of [the double jeopardy clause's] entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, *for the same statutory offence*" (emphasis added). *North Carolina* v. *Pearce*, 395 U.S. 711, 717-718 (1969), quoting from *Ex parte Lange*, 18 Wall. 163, 168 (1873).

---

[10]The same reasoning governs the defendant's challenge to the conversion of the concurrent sentence for knowing receipt of a firearm with a defaced serial number from one-to-two years' incarceration to a period of two years' probation, concurrent with the period of five years' probation on the conviction of assault and battery by means of a dangerous weapon.

[1]Pursuant to the decision of the Appellate Division of the Superior Court, the sentence on the charge of assault and battery by means of a dangerous weapon (count 3) was from nine to ten years in State prison (nunc pro tunc to the date of arrest, June 22, 1996), to run concurrently with the sentence of from nineteen to twenty years for armed assault with intent to murder (count 4); the sentence on the charge of knowing receipt of a firearm with a defaced serial number (count 2) was from one to two years in State prison (nunc pro tunc), to run concurrently with the sentence on count 4. Thus, by the time the defendant was resentenced after remand in October, 2009, the sentences on counts 2 and 3 had been fully served. Under the new sentencing scheme now on appeal, the sentence on count 3 was five years' probation from and after the sentence on count 4; the sentence on count 2 was two years' probation, to run concurrently with the sentence on count 3.

"[D]ouble jeopardy principles prevent enhancing even an invalid sentence once the offender has fully served it." Campbell, Law of Sentencing § 8:15, at 289 (3d ed. 2004). As to Massachusetts law, see *Aldoupolis* v. *Commonwealth*, 386 Mass. 260, 271 n.14, 272, cert. denied, 459 U.S. 864 (1982).[2]

I am not persuaded that the "integrated package" and "sentencing package" construct relied on by the majority dispels the double jeopardy constitutional problem. Rather, from my review of the Federal sentencing case law on which the majority relies, I conclude that the terms "integrated package" and "sentencing package" most frequently appeared in, and may have had their legal etymology in Federal law in connection with idiosyncratic sentencing issues involving the mandatory penalty under 18 U.S.C. § 924(c)(1) (1984), which the United States Supreme Court narrowed in *Bailey* v. *United States*, 516 U.S. 137 (1995). I also conclude that the "package" theory in Massachusetts appears in connection with the community parole supervision for life (CPSL) statute, which the Supreme Judicial Court held to be partially invalid in *Commonwealth* v. *Pagan*, 445 Mass. 161 (2005). I do not read the terms "integrated package" or "sentencing package" to mean that a defendant who appeals from one part of a multiple-count sentence may be resentenced on another sentence that is imposed on a different count for a different offense and that has already been served. Therefore, I respectfully dissent.

1. *The Federal idiosyncratic sentencing issue.* I address Massachusetts double jeopardy law in part 2. However, because the majority relies heavily on Federal sentencing law and the integrated sentencing package language from Federal cases, I turn first to the idiosyncratic sentencing problem, and the use of the integrated sentencing package theory associated with what was a mandatory sentence under 18 U.S.C. § 924(c)(1) (invalidated in the *Bailey* case) for possession of a firearm during

---

[2]The Massachusetts Constitution does not contain a double jeopardy clause. Our State double jeopardy protections are dependent on common-law principles. The double jeopardy clause of the Fifth Amendment to the United States Constitution was "drafted with the common-law protections in mind." *United States* v. *DiFrancesco*, 449 U.S. 117, 134 (1980).

the commission of a drug trafficking offense[3] and a corresponding potential sentence enhancement under the Federal Sentencing Guidelines (Federal Guidelines) for possession of a firearm during commission of a drug offense. See Federal Guidelines § 2D1.1(b)(1) (2011).

The majority states that the component sentences of a "sentencing package" are inseparable, in the following analysis:

> "The components of the scheme work in combination, not isolation. They form a "sentencing package in which sentences on individual counts are interdependent." *United States* v. *Smith*, 115 F.3d 241, 245 n.4 (4th Cir.), cert. denied, 522 U.S. 922 (1997), quoting from *United States* v. *Smith*, 103 F.3d 531, 533 (7th Cir. 1996), cert. denied, 520 U.S. 1248 (1997). See *United States* v. *Hillary*, 106 F.3d 1170, 1172 (4th Cir. 1997); *United States* v. *Benbrook*, 119 F.3d 338, 340 (5th Cir. 1997); *United States* v. *Handa*, 110 F.3d 42, 44 (9th Cir. 1997).
>
> "The subtraction of one or more of the scheme's interdependent elements may disrupt its intended proportions and purposes, and warrant its entire reconstruction within statutory limits by the sentencing judge or a successor."

*Ante* at 735. According to the majority analysis, then, a Federal defendant (and, by analogy, a Massachusetts defendant) would have no expectation of finality in any one of the sentences imposed on separate counts were the defendant to challenge a part of the sentence, on a particular count, even if the sentence on an unchallenged count had been served entirely. Further, by the majority analysis, were one part of a so-called sentencing package to be vacated by an appellate court, then any and all of the remaining sentenced counts could be adjusted by a lower court on a sentencing remand to adjust to what seems to have been the original sentencing intent, even if the sentence on a particular count had been fully served.

---

[3]*Bailey* held that the mandatory sentence under 18 U.S.C. § 924(c)(1) could not be imposed for mere possession of a firearm during commission of a drug trafficking crime, reading the statute to require "active employment" of a firearm in commission of the crime. *Bailey* v. *United States*, 516 U.S. at 144.

I believe the majority is not correct in these respects. The Federal cases cited by the majority for the proposition that individual counts are "interdependent" involve the vacating of 18 U.S.C. § 924(c)(1) mandatory sentences that had been held invalid pursuant to *Bailey* v. *United States, supra*. Specifically, the term "sentencing package" is used in these Federal cases to describe the post-*Bailey* circumstance where a defendant successfully appealed a mandatory sentence under 18 U.S.C. § 924(c)(1) for use of a firearm in connection with drug trafficking. When that § 924(c)(1) mandatory firearm sentence was vacated in a post-*Bailey* appeal, the issue on remand for resentencing became whether the offense at issue — drug trafficking with a firearm present — would now be subject to a general firearm-related two-point level enhancement under the Federal Guidelines, specifically, § 2D1.1(b)(1).[4] (When originally imposed, a Federal pre-*Bailey* § 924[c][1] sentence could not be enhanced under the Federal Guidelines. See, e.g., *United States* v. *McClain*, 133 F.3d 1191, 1192 [9th Cir. 1998]. This is because a mandatory sentence under § 924[c][1] on top of an enhancement under the Federal Guidelines would constitute multiple punishment for the same offense.[5] Thus, in effect, prior to *Bailey*, the § 924[c][1] mandatory firearm-related sentence precluded any firearm enhancement under Federal Guidelines § 2D1.1[b][1].)

Indeed, absent this 18 U.S.C. § 924/Federal Guidelines/*Bailey* sentencing guideline quirk, Federal courts have held that, because of double jeopardy, a defendant's fully served sentences in a multicount sentencing scheme could not be enhanced. See, e.g., *United States* v. *Silvers*, 90 F.3d 95, 101 (4th Cir. 1996)

---

[4]Under the Federal Guidelines, § 2D1.1(b)(1), "If a dangerous weapon (including a firearm) was possessed, increase [the sentencing calculations] by 2 levels."

[5]There are reasons specific to the Federal Guidelines why a single offense level for a group of similar or simultaneous offenses is mandated. For example, if counts were to be treated separately under the Guidelines, they would be assigned "units," which would improperly inflate the sentence (under § 3D1.4 of the Guidelines). Haines, Bowman, & Woll, Federal Sentencing Guidelines Handbook 1157 (2011-2012 ed.). Thus, a Federal sentencing judge applying the Federal Guidelines *must* "package" substantially identical offenses in order to apply the Guidelines correctly. But this justification is not applicable in Massachusetts sentencing law.

("Although an expectation of finality does not legitimately accrue by the mere commencement of the sentence, once a defendant fully serves a sentence for a particular crime, the Double Jeopardy Clause's bar on multiple punishments prevents any attempt to increase thereafter a sentence for that crime"); *United States* v. *Smith,* 115 F.3d at 246 ("No doubt exists that under the court's decision in *Silvers* if a defendant has fully discharged his sentence pertaining to certain counts, he may not be resentenced on those counts").

2. *The Massachusetts idiosyncratic sentencing issue.* The term "integrated [sentencing] package" also appears in Massachusetts cases. But that term fundamentally appears, I submit, in connection with an idiosyncratic sentencing issue, which is analogous to the Federal issue in *Bailey.* As previously noted, the Supreme Judicial Court held in *Commonwealth* v. *Pagan,* 445 Mass. at 171-174, that the CPSL statute under G. L. c. 275, § 18, was partially unconstitutional. Specifically, the sentencing procedures in G. L. c. 275, § 18, were held to be void for vagueness as to category 1 and 2 offenders — an issue that had been recognized but not addressed in *Commonwealth* v. *Renderos,* 440 Mass. 422, 432 & n.10 (2003).

In *Commonwealth* v. *Renderos,* 440 Mass. at 428, the defendant, a first-time offender, had been sentenced to concurrent terms of one and two years, suspended for two years, and CPSL, on convictions of two counts of indecent assault and battery. The court held that the CPSL sentence was illegal, as imposition of CPSL on a first-time offender without a hearing violated the terms of the governing statute, G. L. c. 275, § 18. *Id.* at 434. However, the court rejected the defendant's request to vacate only the illegal CPSL sentence, observing that "[t]he judge's belief that lifetime community parole supervision could be imposed influenced his decision as to the appropriate punishment for the defendant's two convictions. The sentences imposed *constituted an integrated package,* each piece dependent on the other, which cannot be separated" (emphasis supplied). *Id.* at 435. It is here that the "integrated package" term and construct came to the fore in Massachusetts sentencing law, much like in the post-*Bailey* cases cited by the majority. See *Commonwealth* v. *Pagan,* 445 Mass. at 163-164, 174 (vacating entire sentence

and remanding for resentencing where, on conviction of one count of indecent assault and battery on a child under fourteen years of age, the defendant had been sentenced to from six to eight years' incarceration and CPSL, and, on appeal, the court determined that the CPSL sentence was invalid).

In my view, the term "integrated package" appearing in *Renderos* must be considered in the special idiosyncratic context of CPSL, which, prior to the partial invalidation in *Pagan*, led to the potential imposition of CPSL on first-time sex offenders. In essence, the *Renderos* analysis rests on the assumed premise that the defendant's original sentences were influenced by the sentencing judge's belief that a CPSL sentence could be imposed in addition to suspended sentences of incarceration. Thus, when the *Renderos* sentences were imposed, to use the *Renderos* words, they constituted an "integrated package." Significantly, however, *Renderos* does not mean — and cannot constitutionally be read to mean — that a *fully served* sentence may be the subject of the imposition of a new sentence on remand. That is, I believe, a violation of the double jeopardy protection against multiple sentences for the same offense. Cf. *Shabazz* v. *Commonwealth*, 387 Mass. 291, 296 (1982) ("We are aware of no authority, in the face of a double jeopardy challenge, supporting an increase in aggregate punishment by adjustment of unchallenged, final sentences upon the invalidation of another interdependent sentence. Such a possibility would chill the exercise of a defendant's right to challenge an unlawful sentence. To increase Shabazz's aggregate sentence would be essentially unfair. It would violate the double jeopardy clause and would be contrary to the common law of this Commonwealth").

So viewed, the integrated sentencing package theory of *Renderos* did not — as this case does — deal with a fully served sentence on a particular count, as to which the expectation of sentencing finality has vested.[6] Indeed, my research does not

---

[6]To be noted is that the analysis concerning double jeopardy in this case, involving fully served sentences on counts 2 and 3, may or may not differ from an analysis in the case of a final (but not fully served) sentence. As to the finality of a sentence, see Mass.R.Crim.P. 29(a), 378 Mass. 899 (1979), which provides as follows:

"The trial judge upon his own motion or the written motion of a defendant

uncover any case in Massachusetts that has ever allowed revision of a fully served sentence.[7]

I therefore respectfully dissent.

---

filed within sixty days after the imposition of a sentence, within sixty days after receipt by the trial court of a rescript issued upon affirmance of the judgment or dismissal of the appeal, or within sixty days after entry of any order or judgment of an appellate court denying review of, or having the effect of upholding, a judgment of conviction, may, upon such terms and conditions as he shall order, revise or revoke such sentence if it appears that justice may not have been done."

See generally *Aldoupolis* v. *Commonwealth,* 386 Mass. at 268-275.

Accordingly, I do not address herein the double jeopardy issues that may be presented by a sentence that is final under rule 29, but has not been fully served. I only note that, in *Renderos,* 440 Mass. at 423, the defendant alleged error in both the trial and the CPSL sentence, thus implicating rule 29, which would render the sentences imposed not final. I further note that under Mass. R.Crim.P. 30(a), as appearing in 435 Mass. 1501 (2001), a challenge to a sentence as an unlawful restraint can be taken "at any time," that is, may be taken with respect to a sentence that is final under rule 29.

[7] I recognize as the majority posits that, as a practical matter, judges may sentence defendants with a "bottom line" in mind. But, the bottom line, even in "sentencing package" theory may not circumvent the double jeopardy clause, which preserves a defendant's expectation of sentencing finality.