NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13052


COMMONWEALTH  vs.  TONY A. TINSLEY.[1]



Berkshire.     April 5, 2021. - May 6, 2021.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt,
& Georges, JJ.



Armed Home Invasion.  Constitutional Law, Double jeopardy,
     Sentence.  Practice, Criminal, New trial, Double jeopardy,
     Sentence.  Words, "Dwelling place."




Indictments found and returned in the Superior Court
Department on September 23, 2005.

A motion for a new trial, filed on August 6, 2019, was
heard by John A. Agostini, J.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Steven M. Greenbaum, Special Assistant District Attorney,
for the Commonwealth.
S. Anders Smith for the defendant.

_____

     [1] As is our practice, we spell the defendant's name as it
appears in the indictments.  The indictments state that the
defendant also is known as Anthony A. Tinsley and Tone.

GAZIANO, J.  Just after one o'clock in the morning on August 30, 2005, the defendant, along with Anthony Davis, broke into a home near Pittsfield.  The family who lived in the house and had been asleep inside were injured as they fought the intruders and ultimately drove the intruders from their home.  In 2007, a Superior Court jury convicted the defendant of armed home invasion, armed burglary, robbery while armed and masked, assault and battery by means of a dangerous weapon, and assault and battery in conjunction with this incident.  In 2019, he moved for a new trial on the charge of armed home invasion, on the ground that the Commonwealth had not presented sufficient evidence that he was armed when he entered the dwelling, as required by G. L. c. 265, § 18C.  That motion was allowed by a Superior Court judge who also had been the trial judge.

We agree with the judge that the evidence supporting the charge of armed home invasion was insufficient to allow a finding beyond a reasonable doubt on each element of the offense.  We therefore affirm the allowance of the defendant's motion for a new trial, and remand the matter to the Superior Court for resentencing on the remaining convictions.  Under double jeopardy principles, a new sentence may be imposed only on those convictions for which the sentence has not been fully served at the time of resentencing.

1.  Background.  We recite the facts relevant to the issues in the motion for a new trial, based on the trial record.

Sophie and Jack Smith, wife and husband, had lived for fourteen years in a house that they had built in an isolated area in western Massachusetts.[2]  On Monday, August 29, 2005, the couple spent the evening at home.  Their older son had just left to begin his first year at college; their younger son Alex, a senior in high school at that time, went out to see friends and returned home around 11:15 P.M.

All three family members had gone to sleep when, at approximately 1:13 A.M., Sophie was awakened by a noise outside her bedroom door.  Without turning on any lights, she got up, went to the door, opened it, and encountered a man dressed in all black, who was wearing a hat and a mask that concealed his face.  The intruder (the defendant) grabbed her and held an object that seemed to be a screwdriver against her neck.  Sophie began screaming, which woke her husband.  The defendant demanded money from Sophie, and took her into a bathroom, where she gave him the forty-nine dollars that she had on hand.  The defendant brought her back into the bedroom and pushed her down onto the bed.

---

[2] As one of the victims was a minor child, and the family share a last name, we refer to all of the family members by pseudonyms.

While Sophie was getting the money from the bathroom, she heard what sounded like her husband being beaten.  When Jack had gotten out of bed to help his wife, a second intruder, Davis, had struck him on the head with a club or bat that broke upon impact.  Davis then held Jack down, choking him and telling him to "shut up."  Eventually Jack was able to get to his feet, but in the subsequent struggle, he fell and "split open" the top of his head on a bureau.  Davis then stabbed Jack's left hand with the jagged edge of the broken club, severing tendons and nerves. No lights were on in the bathroom or the bedroom during the struggle, leaving the bedroom "very dark," so that Sophie was only able to see silhouettes.  The man fled the room as Jack attempted to defend himself by hitting the man on the back and neck with the broken club.  Jack ran down the hallway after him.

The Smiths' son Alex also had been awakened by his mother's screams.  He yelled and began turning on lights, at which point the defendant apparently fled from the house.  Alex grabbed a knife from the side of his bed and ran into the hallway, where he heard his mother yelling to him to call 911.  He returned to his room and attempted to call, but could not get through.  Alex went back out into the hallway and encountered Davis, who also was fleeing from the Smiths' bedroom.  Alex pursued Davis into the kitchen, tackled him, and stabbed him in the torso.  Sophie attempted to call the police from a landline telephone in the

family's den, but there was no dial tone.  She returned to help Alex, who was wrestling with Davis on the kitchen floor.  Covered in his own blood, Jack joined them.  Davis managed to seize the knife from Alex's hand and, after threatening the family, ran from the house.  At that point, Sophie was able to reach a 911 operator on a cellular telephone.[3]

During the fight in the kitchen, Sophie injured her knee while kicking Davis in an effort to help her son; she required twenty-five to thirty-five stitches and, sometime later, surgery on her knee.  Alex's finger had been cut when he and Davis struggled over the knife, and Alex required seven stitches.  Jack sustained large gashes on his jaw and head, which had to be sutured and stapled; a pierced hand, which also had to be stitched and stapled; a broken nose; and bruises on his face and upper chest.

There was no obvious sign of forced entry into the Smiths' house.[4]  The house had an attached garage, with a door giving

---

[3] It later was discovered that a landline telephone in the kitchen had been unplugged from the wall.

[4] An officer walking around the house after the Smiths had been taken to the hospital noticed that one side of the house had "a lot of sliding glass doors."  The front door and all of the sliding glass doors were locked, except for one sliding door that led directly into the parents' bedroom, which was ajar. The screen door over the locked sliding glass door "had been pulled open" and was found open approximately four or five inches.

access from the interior of the garage to the kitchen. It appeared that the defendant and Davis likely entered and left the house through this door. Entry to the garage from the outside was through an ordinary door that usually was unlocked during the summer; the larger door for vehicles had been open when Alex came home, and he closed it upon his return. The intruders appeared to have attempted to enter the garage through a window; they had dragged a chair up to it and had removed a screen. Although the interior door from the garage to the house was locked, Alex had left his keychain, which contained a house key, in a truck parked in the garage. After the fight, the Smiths saw Davis flee the kitchen through the door to the garage; police later found a trail of blood on the garage floor. Investigating officers also found Alex's keychain lying in the grass outside the house.

A screwdriver was lying on the garage floor under one of the parked vehicles. Sophie testified that the family's screwdrivers were kept in a toolbox in the garage, and that none had been left on the floor when she went to bed that evening. She also testified that the screwdriver found on the garage floor was larger than the one that the defendant had held to her throat. Police did not find any smaller screwdrivers in the garage or the house. At trial, the prosecutor argued that while the screwdriver found on the floor was not the one used in

robbing Sophie, the presence of a screwdriver on the garage floor was evidence that the intruders had gone through the family's toolbox and, inferentially, that the defendant had taken the screwdriver he used as a weapon.

Police were dispatched to the defendant's apartment late in the evening of the following day, after Davis, who was staying with the defendant, sought emergency medical attention for his stab wounds. When police arrived at the apartment building, Davis came to meet them outside, carrying bloody paper towels, with blood-soaked paper towels wrapped around his torso and a bandage on his arm. After the officers summoned an ambulance to take Davis to the hospital, they spoke with an occupant of the building from which Davis had emerged and learned that Davis was staying at the defendant's apartment in that building. Deoxyribonucleic acid (DNA) evidence eventually implicated both Davis and the defendant in the crimes against the Smiths. Among other items seized, DNA collected from a face mask and a baseball cap found near the Smiths' home matched Tinsley's DNA profile. DNA from a bloodstain on the Smiths' driveway matched Davis's DNA profile.

At trial, the defendant testified on his own behalf. He denied any involvement in the crimes. On the second day of deliberations, the jury submitted a question to the judge, worded as follows:

"Armed home invasion element number [three]:  One, does entry into the attached garage constitute entry into the dwelling house; two, does passing from the attached garage into the house constitute entering the dwelling place?"

After consulting with the attorneys for both parties, the judge instructed the jury that the answer to both questions was "yes." Later that day, the jury returned verdicts of guilty on all counts.

The judge sentenced the defendant to a term of from twenty to thirty years in State prison on the charge of armed home invasion (count 4); ten to fifteen years' imprisonment on the charge of armed burglary (count 5), from and after the sentence on count 4; ten to fifteen years for the conviction of armed robbery while masked (count 1), from and after the sentence on count 4; two to five years' imprisonment on the conviction of assault and battery by means of a dangerous weapon (count 2), concurrent with the sentence on count 1; and two and one-half years in a house of correction for the assault and battery (count 3), concurrent with the sentence on count 1.

2.  Posttrial proceedings.  In September of 2007, the defendant appealed from his sentence to the Appellate Division of the Superior Court.  See Commonwealth v. Barros, 460 Mass. 1015, 1015 (2011), citing G. L. c. 278, § 28B.  In June of 2008, the Appellate Division issued an order increasing the defendant's sentence on the conviction of armed home invasion,

from twenty-five to thirty years of imprisonment, to thirty to thirty-five years, but also made all of the other sentences concurrent with that sentence, rather than consecutive. The over-all period of incarceration thus was decreased, from an aggregate forty to sixty years, to an aggregate thirty to thirty-five years. The Appeals Court affirmed the convictions. Commonwealth v. Tinsley, 73 Mass. App. Ct. 1120 (2009).

In August of 2019, the defendant moved for a new trial on the ground that the Commonwealth had not produced sufficient evidence that he had been armed with a dangerous weapon prior to entering the Smiths' house, as required by G. L. c. 265, § 18C, given that he appeared to have found the screwdriver he used in the armed robbery in the attached garage. The judge concluded that the home invasion statute was inapplicable in the circumstances because the defendant had armed himself only after he entered the garage, and thus that the conviction had to be vacated. The judge also noted that his own erroneous answer to the jury's question had created a substantial risk of a miscarriage of justice. The Commonwealth appealed, and we transferred the case from the Appeals Court on our own motion.

3. Discussion. The defendant argues that his conviction under the armed home invasion statute was invalid, as there was insufficient evidence that he was armed when entering the dwelling. We agree that this conviction cannot stand. The

defendant also maintains that principles of double jeopardy preclude him from being resentenced on the remaining convictions. We conclude that the defendant may be resentenced, so long as any resentencing takes place before he completes serving the sentences on any convictions for which a new sentence would be imposed.

a. <u>Conviction of armed home invasion</u>. A judge "may grant a new trial at any time if it appears that justice may not have been done." Mass. R. Crim. P. 30 (b), as appearing in 454 Mass. 1501 (2009). Our review of a decision on a motion for a new trial generally "is limited to whether the judge's decision constitutes an abuse of discretion or contains any other error of law," with special deference given to both factual findings and the ultimate decision where, as here, the motion judge was also the trial judge. <u>Commonwealth</u> v. <u>Lane</u>, 462 Mass. 591, 597 (2012).

The key question at issue in this case is one of statutory interpretation, which we review de novo. <u>Lazlo L</u>. v. <u>Commonwealth</u>, 482 Mass. 325, 328 (2019). The home invasion statute, G. L. c. 265, § 18C, provides:

> "Whoever knowingly enters the dwelling place of another knowing or having reason to know that one or more persons are present within or knowingly enters the dwelling place of another and remains in such dwelling place knowing or having reason to know that one or more persons are present within while armed with a dangerous weapon, uses force or threatens the imminent use of force upon any person within

such dwelling place whether or not injury occurs, or intentionally causes any injury to any person within such dwelling place shall be punished by imprisonment in the state prison for life or for any term of not less than twenty years."

The offense thus has four elements: (1) a knowing entry into or remaining in another's dwelling, (2) with the knowledge that at least one person is present in the dwelling and (3) while being armed with a dangerous weapon, followed by (4) the use or imminent threat of force against someone in the dwelling, or causing of an injury. See Commonwealth v. Doucette, 430 Mass. 461, 465-466 (1999).

There is no dispute in this case that the first, second, and fourth elements have been met. The judge found that the defendant entered the Smiths' house through the garage, and there armed himself with a screwdriver, before passing through the interior door into the kitchen. See Doucette, 430 Mass. at 465-466. The question is whether, on these facts, the defendant "enter[ed] the dwelling place of another . . . while armed with a dangerous weapon." G. L. c. 265, § 18C. See Commonwealth v. Ruiz, 426 Mass. 391, 392 (1998). In Ruiz, supra at 392-393, we held that a "plain reading of" G. L. c. 265, § 18C, "require[s] the Commonwealth to prove that the defendant was armed with a dangerous weapon at the time of entry" (emphasis added). See id. at 391-393 (no liability for armed home invasion where defendant entered apartment, seized victim's crutch, and then

beat victim with it).  Thus, if the defendant's entry into "the dwelling place of another" occurred when he first entered the garage attached to the Smiths' house, he was not "armed with a dangerous weapon" at that point, and therefore cannot be liable for armed home invasion.[5]

The term "dwelling place of another" is not defined in G. L. c. 265, § 18C.  Where a term is not defined in the language of the statute, we look to the plain and ordinary meaning of the word.  "We derive the words' usual and accepted meaning from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions."  Commonwealth v. Montarvo, 486 Mass. 535, 536 (2020), quoting Commonwealth v. Garvey, 477 Mass. 59, 61-62 (2017).  See Commonwealth v. Hanson H., 464 Mass. 807, 810 (2013) (when word is not defined in statute, we "interpret it according to its ordinary meaning," but "we look to the language of the entire statute, not just a single sentence, and attempt to interpret all of its terms 'harmoniously to effectuate the intent of the Legislature'" [citations omitted]).

---

[5] The offense of armed burglary, by contrast, applies specifically to a defendant who was "armed with a dangerous weapon at the time . . . of breaking or entry [into a dwelling house], or so arm[ed] himself in such house."  See G. L. c. 266, § 14.

Accordingly, we have treated the phrase "the dwelling place of another" as equivalent to the term "dwelling house" that is used in the related statutes defining various types of burglary. See G. L. c. 266, §§ 14-15; Doucette, 430 Mass. at 467 ("The term 'dwelling house' as used in the context of burglary always has been construed broadly, . . . and, for purposes of the burglary statute, 'an apartment dweller's "dwelling house" does include secured common hallways'"; "as the physical features of a multi-family residential structure will vary from case to case, so too will the determination whether the common areas of that structure, even if locked, constitute the tenant's 'dwelling house'" [citations omitted]). See, e.g., Commonwealth v. Marshall, 65 Mass. App. Ct. 710, 714-715 (2006) (referring "to the closely related burglary statutes . . . in order to ascertain the meaning of 'dwelling place of another'").

The term "dwelling house," in turn, "has been construed broadly" for purposes of the burglary statutes. See Commonwealth v. Goldoff, 24 Mass. App. Ct. 458, 462-463 (1987) (secured common hallways in apartment building were part of dwelling house). Indeed, at common law, "every house for the dwelling and habitation of man" was taken to include not only the dwelling house proper, "but also the outhouses, such as barns, stables, cow-houses, dairyhouses, and the like, if they be parcel of the messuage, though they be not under the same

roof, or joining contiguous to it."  Devoe v. Commonwealth, 3 Met. 316, 325 (1841).  See Commonwealth v. Correia, 17 Mass. App. Ct. 233, 236 (1983) (given "historical background of the burglary statutes," motel meets definition of "dwelling house").  In light of these precedents, we agree with the motion judge that the defendant's entry into the Smiths' attached garage constituted an entry into "the dwelling place of another."

The Commonwealth does not contest that, under the armed home invasion statute, entry into the garage constituted entry into the Smiths' "dwelling place."  Rather, it argues that the subsequent entry from the garage into the house through the locked interior door was a separate and independent entry into "the dwelling place of another" within the meaning of the statute, at which point the defendant was armed.  In essence, the Commonwealth argues that the element of knowing entry in the armed home invasion statute should apply separately to any entry into a reasonably discrete or separate area within a structure, regardless of any earlier entries.

In support of this position, the Commonwealth points out that, while the principal purpose of the burglary statutes is to protect property, that of the armed home invasion statute is to protect persons, as evidenced by the placement of the two offenses in different chapters of the General Laws, titled "Crimes Against Property" and "Crimes Against the Person."  See

Commonwealth v. Antonmarchi, 70 Mass. App. Ct. 463, 467-468 (2007). Given this distinct purpose, the Commonwealth maintains that the Legislature deliberately sought to criminalize a wider range of conduct under the armed home invasion statute, and signaled this intent by employing the less common term "dwelling place" rather than the familiar phrase "dwelling house" used in the burglary statutes.

We agree with the motion judge that this broad reading of "dwelling place" potentially would allow a defendant's crossing into any "room, closet, or ancillary space" inside a single house to be considered a separate entry that could support a conviction of armed home invasion. Even if, as the Commonwealth suggested at argument before us, the question whether a place is sufficiently discrete enough to be considered a separate dwelling is a "matter of common sense," this reading nonetheless would permit many different "entries" to take place during one incidence of home invasion. Such an outcome itself would be contrary to common sense, and also essentially would overturn our decision in Ruiz, 426 Mass. at 393, that, to be convicted under the statute, a defendant must be armed "at the time of entry" into the dwelling. "A statute or ordinance should not be construed in a way that produces absurd or unreasonable results when a sensible construction is readily available." Manning v. Boston Redev. Auth., 400 Mass. 444, 453 (1987). "If a sensible

construction is available, we shall not construe a statute to make a nullity of pertinent provisions or to produce absurd results."  Flemings v. Contributory Retirement Appeal Bd., 431 Mass. 374, 375-376 (2000), citing Manning, supra, and cases cited.

Moreover, as noted, our prior cases have treated "dwelling house" and "dwelling place" as having essentially the same meaning.  Doucette, 430 Mass. at 467.  The presumption of synonymy is supported by the use of the term "dwelling house" rather than "dwelling place" in G. L. c. 265, § 18A (armed assault in a dwelling), a statute concerning an offense against the person, and that is "functionally much closer" to the armed home invasion statute than are the burglary statutes.  See Antonmarchi, 70 Mass. App. Ct. at 467.  Although "dwelling house" and "dwelling place" may not have an identical meaning in every circumstance, see Commonwealth v. Mahar, 430 Mass. 643, 652 n.5 (2000) (term "enters" is not "entirely the same" for burglary and armed home invasion), their meanings are not as widely divergent as the Commonwealth here suggests.  The use of slightly different terms in multiple statutes does not create a presumption of different meanings.  See Commonwealth v. Williamson, 462 Mass. 676, 682 (2012) (canon that different terms are presumed to have different meanings applies to terms used in same statute).  "The Legislature need not, at its peril,

use the exact same formula for each statutory provision in order to achieve a particular result." Commonwealth v. Vega, 449 Mass. 227, 232-233 (2007).

Here, because there was no evidence that the defendant armed himself with a weapon before he entered the Smiths' home, he cannot be convicted of armed home invasion.  See Commonwealth v. Latimore, 378 Mass. 671, 677 (1979) (taken in light most favorable to Commonwealth, evidence must be sufficient for "jury to infer the existence of the essential elements of the crime charged" [citation omitted]).  Thus, there was no abuse of discretion in the allowance of the defendant's motion for a new trial.

b.  Resentencing.  "[T]he Double Jeopardy Clause prohibits retrial after a conviction has been reversed because of insufficiency of the evidence."  United States v. DiFrancesco, 449 U.S. 117, 131 (1980).  See Commonwealth v. Sanchez, 485 Mass. 491, 507 n.9 (2020); Marshall v. Commonwealth, 463 Mass. 529, 538 (2012).  The question remains whether, as the defendant argues, principles of double jeopardy also prevent him from being resentenced on the remaining convictions.

At the original sentencing hearing, the trial judge emphasized the severity of the crimes; he noted that a malicious entry into one's home is what "we all fear," and decided that the defendant should serve successive sentences for armed home

invasion, armed burglary, and armed and masked robbery.  Given the combination of consecutive and concurrent sentences, the aggregate total sentence was for from forty to sixty years in prison.  The Appellate Division of the Superior Court then revised the sentence for the conviction of armed home invasion from thirty to thirty-five years of imprisonment, with all of the other sentences to be served concurrently.

The Commonwealth argues that vacating the conviction (and thus the sentence) for armed home invasion requires that the case be remanded for resentencing on the remaining convictions. In support of its position, the Commonwealth points to Commonwealth v. Leggett, 82 Mass. App. Ct. 730, 735 (2012), in which the Appeals Court held that "subtraction of one or more of [a sentencing] scheme's interdependent elements may disrupt its intended proportions and purposes," such that when an "appellate court reverses one or more of several convictions resulting from the same trial, it may remand the case to the trial judge for reconsideration of the entire sentencing structure."  The defendant argues that his sentences (which have been concurrent since June of 2008) are not actually "interdependent," and that imposing longer sentences on the remaining charges would violate principles of double jeopardy.

Sentences are interdependent when they function to realize an "over-all concept in sentencing" (citation omitted),

Commonwealth v. Parrillo, 468 Mass. 318, 321 (2014), for convictions arising out of a single incident, see Shabazz v. Commonwealth, 387 Mass. 291, 292 & 295 n.4 (1982). Interdependent sentences "constitute[] an integrated package, each piece dependent on the other, which cannot be separated." Commonwealth v. Renderos, 440 Mass. 422, 435 (2003).  In such packages, the primary sentence to which other sentences are tied is referred to as the "anchor sentence."  See Wolcott, petitioner, 32 Mass. App. Ct. 473, 475-477 (1992).  In Leggett, 82 Mass. App. Ct. at 732, for instance, the defendant originally was sentenced (following revision by the Appellate Division) to a term of from nineteen to twenty years for armed assault with intent to murder (the anchor sentence), with concurrent shorter sentences on two firearms convictions and a conviction of assault and battery by means of a dangerous weapon, all arising from a single incident.

Here, the original sentence of armed home invasion functioned as an "anchor" sentence for the other two most serious offenses, which themselves then served to anchor the other, shorter sentences.  The Appellate Division clearly had an "over-all concept" in mind when it modified the defendant's sentences so that they all ran concurrently, but lengthened the sentence on the armed home invasion by five years.  The result of making each of the sentences concurrent, in combination with

the five-year increase on both ends of the range on the sentence for armed home invasion, was to reduce the maximum possible time the defendant would serve by almost one-half, and to reduce the minimum time from forty to thirty years.

We turn, then, to the question whether double jeopardy principles bar the imposition of new, longer sentences on the remaining convictions. The guarantee against double jeopardy in the Fifth Amendment to the United States Constitution involves "three independent protections. 'It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" Commonwealth v. Selavka, 469 Mass. 502, 509 (2014), quoting Aldoupolis v. Commonwealth, 386 Mass. 260, 271-272, cert. denied, 459 U.S. 864 (1982), S.C., 390 Mass. 438 (1983).[6] The third protection generally implies that "[a]fter a sentence is final, . . . a defendant may not be sentenced again for that same conviction." Commonwealth v. Goodwin, 458 Mass. 11, 19-20 (2010).

---

[6] "Unlike the United States Constitution, the Massachusetts Declaration of Rights does not include a double jeopardy clause, but our statutory and common law have long embraced the same principles and protections." Kimbroughtillery v. Commonwealth, 471 Mass. 507, 510 (2015).

Nonetheless, it is long established in the Commonwealth that "a successful challenge to one sentence imposed at the same time as other sentences . . . opens up all the interdependent, lawful sentences for reconsideration without violating the double jeopardy clause."  Shabazz, 387 Mass. at 295-296.  That is so because, in such cases, a "dependent relationship exists between the different components of a sentencing scheme," so that "subtraction of one or more of the scheme's interdependent elements may disrupt its intended proportions and purposes."  Commonwealth v. Walters, 479 Mass. 277, 283 (2018), quoting Leggett, 82 Mass. App. Ct. at 735.  Moreover, although the double jeopardy clause "represents a constitutional policy of finality for the defendant's benefit," Goodwin, 458 Mass. at 19, quoting Aldoupolis, 386 Mass. at 274, when a defendant files a motion for postconviction relief, the defendant's expectation of finality in the sentences imposed is diminished, see Commonwealth v. Cumming, 466 Mass. 467, 471 (2013).  A defendant does not have "a reasonable expectation of finality in any one part or element of [an interdependent] bundle of sentences, but rather, in the entirety of the scheme."  Id., quoting Leggett, supra, at 736-737.  See United States v. McClain, 133 F.3d 1191, 1194 (9th Cir.), cert. denied, 524 U.S. 960 (1998) ("A defendant's expectations regarding finality . . . relate only to his entire sentence, not the discrete parts").

Double jeopardy principles do impose at least two specific restrictions on the power to resentence. First, "resentencing must not result in any increase in the aggregate punishment." Parrillo, 468 Mass. at 321. See Shabazz, 387 Mass. at 296 (double jeopardy bars "increase in aggregate punishment by adjustment of unchallenged, final sentences upon the invalidation of another interdependent sentence"). See, e.g., Commonwealth v. Cole, 468 Mass. 294, 310 (2014); Cumming, 466 Mass. at 472. Second, "double jeopardy principles bar resentencing on any conviction for which the defendant has already fully served his sentence." Commonwealth v. Sallop, 472 Mass. 568, 570 (2015). See Aldoupolis, 386 Mass. at 272 ("Once a defendant has served fully the proper sentence prescribed by law for the offense committed, the State may not punish him [or her] again").

We note that a number of these cases have involved resentencing after a successful motion under Mass. R. Crim. P. 30 (b) by a defendant whose sentence had been determined to be illegal, but whose convictions themselves were not invalid. See Goetzendanner v. Superintendent, Mass. Correctional Inst., Norfolk, 71 Mass. App. Ct. 533, 537 (2008) (illegal sentence is one contrary to applicable statute or "premised on a major misunderstanding by the sentencing judge as to the legal bounds of his authority"). The same reasoning applies, however, to

resentencing after a conviction is reversed on sufficiency grounds.  See Commonwealth v. Scott, 86 Mass. App. Ct. 812, 816-817 (2015) (where one of defendant's five convictions was reversed for insufficient evidence, Parrillo, 468 Mass. at 321, governed, permitting resentencing solely on one conviction for which defendant had not completed serving sentence).  The bar on increases in aggregate punishment or in resentencing on sentences that have been fully served balances the protection of the defendant's constitutional right to finality of his or her sentences, Goodwin, 458 Mass. at 19, and "the just demands of a wronged society" to which the sentences must respond, see Commonwealth v. Plasse, 481 Mass. 199, 199 (2019), quoting Commonwealth v. Rodriguez, 461 Mass. 256, 259 (2012).  See, e.g., State v. Martin, 2009 VT 15, ¶¶ 10-11 (resentencing on surviving count of indictment did not violate double jeopardy).  Under these principles, the defendant may be resentenced on any of the sentences that he is serving at the time of resentencing, provided that his aggregate term of incarceration is not increased.

4.  Conclusion.  The defendant's conviction of armed home invasion is vacated and set aside, and judgment shall enter for the defendant on that charge.  The matter is remanded to the Superior Court for reconsideration of the sentencing scheme on the remaining convictions.

So ordered.